◼ In the Matter of SANDRA SIMMONS et al., Petitioners, v JAMES R. VAN ALSTYNE, as Commissioner of the Columbia County Department of Social Services, et al., Respondents.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the New York State Commissioner of Social Services, made after a fair hearing, which denied or terminated Medicaid benefits to each of the petitioners. The petitioners are

residents of a community known as the Abode of the Message located in New Lebanon, New York. There are about 70 adult residents, termed family members, in the community. All of the adult residents paid an entry fee of $500, and each adult pays $105 per month for room and board. The Abode of the Message is a Type B not-for-profit corporation incorporated in 1975, pursuant to section 201 of the Not-For-Profit Corporation Law for the purpose of establishing "an in-residence economically self-sustaining spiritual center for the purpose of promoting the religious teachings of the Sufi order". The corporation acquired 420 acres of land, together with the buildings thereon, in New Labanon in August, 1975 for the sum of $420,000. This property is subject to a mortgage in the amount of $350,000. The monthly rental payments are used to defray the expenses for board, taxes, mortgage payments, and for repairs and maintenance of the buildings. The Abode of the Message is also the sole stockholder of a business corporation known as the Winged Heart Corporation. This corporation operates an automobile repair garage, a bakery, a furniture-making and sales business, a woodstove and log-splitting equipment shop, a computer consultant service, and a home insulation business. The adult residents obtain the income needed to pay their rent and for other personal necessaries by a system of credits based upon the number of hours worked. The residents may work for the community, for the Winged Heart Corporation, for individuals, or for businesses not connected with the community. Those residents who work for the Winged Heart Corporation or for outside employers are required to turn in all the income to a credit pool. At the end of each month, those who have contributed the income receive 15% to 40% of the individual's contributed earnings as a profit-sharing amount. The balance then remaining is distributed to the residents on the basis of 75 cents per credit hour earned during the month. Those who work only for the community are not eligible for profit-sharing, but are given additional credit for each hour worked depending upon the work performed. The $105 per month for room and board is then deducted from the amount due each resident, and a slip is given to each resident setting forth the amount due to each of them. The amount shown on the slip may be withdrawn for personal needs, or may be left on deposit, without interest, for future withdrawal. The residents are not required to turn over any property other than the entry fee, and there is no agreement specifying the respective rights and obligations of the parties. The residents have no right to the return of the $500 entry fee, and have no right to claim any money from the credit pool, except such amounts as may have accrued as a credit balance resulting from work credits left on deposit. Each of the petitioners herein applied for and two were granted medical assistance by the Columbia County Department of Social Services. In November, 1976 the said department advised each of the petitioners that their applications had been denied or assistance terminated for the following reason: "You are a member of the Abode of the Message and have communal resources which are in excess of the allowable level" and, as a result, are ineligible for medical assistance. Each of the petitioners requested a fair hearing. The reason for denial or discontinuance of medical assistance being the same for each petitioner, a joint hearing was held on December 6, 1976. At the hearing, the agency representative stated that the determination to discontinue or to deny medical assistance was prompted by an inquiry into the Abode of the Message from which it was found that it "is a religious community which was established as a self-standing, self-maintaining community in which they require an initial membership fee of all new members, and once a member of the community, the community is

self-supporting, and it is known all the needs of its members are met through the communal fund and communal resources. * * * Also, as members of the community, it was the agency feeling all resources are available to each member equally." On cross-examination the agency representative stated that the determination was based on conversations with petitioners' attorney and numerous newspaper articles in newspapers throughout the area. No other testimony or evidence was offered by the Columbia County Department of Social Services. Petitioners and their attorney, who is also a resident of the Abode, testified as to the facts outlined above, concerning the organization of the corporations, the financial structure, their individual work situations and the credit system. Petitioners' attorney objected to questions about the individual earnings of the petitioners on the ground that the issue at the hearing was the availability to each petitioner of communal resources, and not the actual earnings of each petitioner. During the hearing the agency representative stated that the issue involved was whether these petitioners had available to them the resources or the assets of the Abode, including the Winged Heart Corporation, so that they are disqualified for medical assistance. Toward the end of the hearing, he stated the issue to be "although some of these individuals may have been eligible through income available to them, the communal resources of the Abode was the disqualifying factor." On January 5, 6 and 7, 1977, the New York State Commissioner of Social Services rendered decisions in all three cases, affirming the decision of the Columbia County Department of Social Services. In each case, after listing various factual findings relating to the organization of the Abode and the Winged Heart Corporation, the financial structure and the credit system, he determined: "Section 360.4(b) of the Regulations of the New York Department of Social Services provides that social services officials shall require verification of wages for all wage earners in the family household to be submitted. In this regard, the record establishes that the [petitioner] merely gave an oral statement as to the income she received from the credit pool and her counsel, although giving an explanation of how income allegedly is disbursed from the Abode credit pool, did not provide books, records, wage statements, etc., showing receipts and disbursements for the [petitioner]. This does not comprise sufficient verification within the ambit of Regulation 360.4. Accordingly, the agency determination to discontinue medical assistance was correct." No determination, however, was made on the question of whether communal resources were available to these petitioners. The petitioners now contend that the denial and termination of medical assistance upon a ground not contained in the notices of denial or termination issued by the County Department of Social Services, and not in issue in the fair hearing, is unlawful and must be set aside. A notice of denial or discontinuance of medical assistance must set forth the specific reason for ineligibility (18 NYCRR 360.15). A fair hearing decision is required to "be based exclusively on evidence and other material introduced at the hearing" (18 NYCRR 358.18). The fair hearing determinations herein, having been predicated upon the failure of the petitioners to sufficiently verify their income, are premised on a ground not set forth in the notices of denial and termination, and cannot be sustained (Matter of Brooks v Dumpson, 47 AD2d 826; Cruz v Lavine, 45 AD2d 720; Matter of Ryan v New York State Dept. of Social Servs., 40 AD2d 867). The record indicates that the respondents' evidence introduced at the fair hearing was based entirely upon conjecture and hearsay, the agency's representative having admitted that the determination to deny and discontinue medical assistance was based upon newspaper articles and conversations with pe-

titioners' attorney. There was no evidence that the agency had made a collateral investigation to ascertain the availability of communal resources as required by 18 NYCRR 360.4 (d) where a social service official has reason to believe that an applicant or recipient has misrepresented statements in his application. The burden of proof when discontinuing aid is upon the local agency in the first instance, and not upon the petitioner (Matter of McNeair v Sipprell, 82 Misc 2d 724). The hearsay and conjectural evidence introduced by the respondents on the fair hearing does not meet this burden, and, further, does not meet the test of substantial evidence on the issue of availability of communal resources to the petitioners. With respect to the available resources issue, in Matter of Dumbleton v Reed (40 NY2d 586), the court clearly states that in order for a resource to be considered available, it must be "actually available" and relating to evaluating resources, the court stated (p 587): "Section 366 of the Social Services Law sets forth the standards of eligibility for medical assistance and subdivision 2 of paragraph (b) of that section directs that, "[i]n establishing standards for determining eligibility for and amount of such [medical] assistance, the department shall take into account only such income and resources, in accordance with federal requirements, as are available to the applicant or recipient * * * and there shall be a reasonable evaluation of any such income or resources." Such an evaluation of communal resources available to petitioners is absent from the record herein. The petitioners are, therefore, entitled to an annulment of the determinations of the respondents. Determinations annulled, without costs, petitions granted and matters remitted from further proceedings not inconsistent herewith. Mahoney, P. J., Sweeney, Kane, Staley, Jr. and Herlihy, JJ., concur.