830 P.2d 563

**Robert KEGEL, as Father and Next Friend of Eric Kegel, a Child, Plaintiff–Appellant,**

**v.**

**STATE of New Mexico, New Mexico Human Services Department, Defendant–Appellee.**

**No. 12516.**

Court of Appeals of New Mexico.

March 5, 1992.

Steven Granberg, Albuquerque, for plaintiff-appellant.

Helen P. Nelson, Deputy Gen. Counsel, Office of Gen. Counsel, Human Services Dept., Santa Fe, for defendant-appellee.

OPINION

MINZNER, Judge.

Robert Kegel, the father and next friend of his minor son, Eric Kegel, appeals the termination of Eric's health care benefits by the Human Services Department (the Department). The sole appellate issue is whether the Department erred in determining that the trust of which Eric is a beneficiary is a "Medicaid qualifying trust" under 42 U.S.C. Section 1396a(k) (1989) and that the trust estate, proceeds of a personal injury settlement, was "available" under 42 U.S.C.A. Section 1396a(a)(17)(B) (Supp. 1991). We conclude that the trust of which Eric is a beneficiary is not a Medicaid qualifying trust because there is insufficient evidence in the record to support a determination that he should be characterized as the grantor, and we reverse.

## I.  FACTS.

Eric, who is seven years old, was born with cerebral palsy and a seizure disorder. He is severely physically disabled and will "most likely always need total care." The record indicates that his "cognitive abilities are an unknown factor." Eric has been a recipient of health care benefits through the Department since July 1987.

Eric's injuries were the basis of a malpractice action filed by his parents. Eric became an additional plaintiff, and the district court appointed a conservator for him pursuant to NMSA 1978, Section 45–5–401 (Repl.Pamp.1989) (conservatorship proceedings). The case was settled prior to trial. The settlement agreement provided for a "trust fund to be established in Eric Kegel's behalf" of which his conservator would be trustee.

In the settlement process, several checks were issued. With the exception of one check, which was payable to the Department, the checks were issued jointly to Eric's parents, his conservator, and their attorneys. On one of the three checks

contained in the record, each parent is listed "Individually and as natural guardian of Eric Kegel." On the others, they are named payees without any qualifying language after their names. Each of the checks lists Eric's conservator by name and title. As part of the settlement process, as well, the defendants in the malpractice action assigned an annuity to "Eric Kegel, a minor/Margaret Burgess as the next friend and Conservator of the Estate of Eric Kegel, a minor, Suzanne Bakewell Kegel, individually and Robert Kegel, individually."

Eric's father used a portion of the initial lump sum received in settlement to pay medical bills. The remaining money and an annuity were placed in a trust, which is evidenced by a written trust agreement that designates Eric's conservator as both "Grantor" and "Trustee." Both the trust and the settlement agreement were signed in December 1988.

The agreement describes the trust as "providing discretionary supplemental benefits/support to the beneficiary beyond those available to him through any Federal, State, local, or other private programs or funds[.]" The trust provides that "[n]o trust income or principal shall be distributed for the benefit of the beneficiary as long as the Trustee determines that sufficient funds or benefits are thus otherwise available." Nothing in the record documents the transfer of the funds represented by checks or any interest in the annuity from Eric's parents to his conservator, but both parents signed written consents to the creation of the trust.

Upon learning of the trust and the monthly annuity subject to the trust, the Department notified Eric's father of its intent to terminate Eric's benefits. After a hearing, the Department concluded that Eric was ineligible because (1) the trust was a Medicaid qualifying trust, (2) the maximum amount available to him exceeds the eligibility limitations of the program under which he receives benefits, and (3) the trust assets were otherwise "available."

Eric's father contends on his son's behalf that the Department, which relied on a

legal opinion issued by the Health Care Financing Administration (HCFA), erred in characterizing the trust as a Medicaid qualifying trust. We agree.

## II. MEDICAID QUALIFYING TRUST.

■ It is clear that in this case Eric's father had a duty to keep the Department informed of any change in his son's financial situation. *See* Income Support Division Rule 161.3 (1990). At the administrative hearing conducted below, however, the burden of proof was upon the Department to show that Eric was no longer eligible for benefits by showing that the trust fund in question was a Medicaid qualifying trust, and thus "available" income, under Section 1396a(k). *See Simmons v. Van Alstyne*, 65 A.D.2d 869, 410 N.Y.S.2d 400 (1978) (burden of proof when discontinuing benefits based on excessive available income is on local agency, not petitioner, in first instance).

In determining program eligibility, the Department was entitled to consider "only such * * * resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient." § 1396a(a)(17)(B); *see generally Miller v. Ibarra*, 746 F.Supp. 19, 25 (D.Colo.1990) ("To determine eligibility for and the extent of Medicaid assistance, state plans are allowed to take into account only income that is actually 'available' to the claimant."). The Department has argued on appeal that the trust is an "available resource" under Section 1396a(k). Section 1396a(k)(1) characterizes as available "the maximum amount of payments that may be permitted under the terms of [a Medicaid qualifying trust] to be distributed to the grantor, [under the terms of the trust,] assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor."

Section 1396a(k)(2) defines a Medicaid qualifying trust as:

[A] trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual.

The letter from HCFA on which the Department relied noted the following:

The HCFA *State Medicaid Manual* interprets the provisions of Section 1902(k) of the Social Security Act, and provides that the beneficiary of the trust must be the person, or spouse of the person who established the trust. This requirement is met where the beneficiary's guardian or legal representative, acting on his/her behalf establishes the trust.

HCFA reasoned that Eric's conservator, under New Mexico law, was acting on his behalf in receiving the settlement proceeds, *see, e.g.*, § 45–5–401(A)(1), (2), (B)(1); *see also* NMSA 1978, §§ 45–5–423, –424(C)(24) (Repl.Pamp.1989), and concluded "[t]herefore, when Ms. Burgess transferred the annuity payments into the corpus of the trust created for Eric's benefit, it was the legal equivalent of Eric himself transferring the assets and creating the trust himself." The Department asks us to hold that a trust created by a conservator for the benefit of the conservator's ward is a Medicaid qualifying trust.

While there is some legal support for the Department's view and the analysis by HCFA on which the Department relied, *see Hatcher v. Department of Health & Rehabilitative Servs.*, 545 So.2d 400 (Fla.Ct.App. 1989) (holding that a guardian's creation of a trust for the benefit of a Medicaid claimant was subject to consideration as part of the claimant's available resources), there is also authority to the contrary. *Miller*, 746 F.Supp. at 33 (analyzing *Hatcher* as relying on Florida law "to reach the conclusion that the guardian was merely acting in place of the incompetent person"; distinguishing Colorado law and holding that the creation of a trust by a conservator under Colorado law was not a transfer by the incompetent person on whose behalf the trust was created). We are not prepared to say that there is a relevant difference, for purposes of Section 1396a(k), between the

relationship of a conservator and that of a guardian to the ward. *Compare* 39 Am. Jur.2d *Guardian and Ward* § 1 (1968) ("[I]n some jurisdictions a conservator may be appointed. He has the same powers and obligations as a guardian so far as they relate to the property of the ward, so that, in effect, he is a guardian of the estate.") *and In re Estate of Guerra,* 96 N.M. 608, 633 P.2d 716 (Ct.App.1981) (guardians of a ward's property are bound by duties of a trustee and officer of the courts). We cannot reconcile *Hatcher* and *Miller* on that basis.

██ Nevertheless, the only kind of trust to which Section 1396a(k)(2) expressly extends is one created by the beneficiary or the beneficiary's spouse. *See, e.g., Pollack v. Department of Health & Rehabilitative Servs.,* 579 So.2d 786, 788 (Fla.Ct.App.1991) (trust established by appellant's husband gave her income for life and a contingent interest in the principal; trust held a Medicaid qualifying trust). States may not create an exclusion from eligibility for receipt of public assistance benefits unless federal law clearly authorizes it. *See, e.g., Philbrook v. Glodgett,* 421 U.S. 707, 719, 95 S.Ct. 1893, 1901, 44 L.Ed.2d 525 (1975). In *Miller,* Judge Carrigan noted that the guidelines applicable to Medicaid qualifying trusts, which are consistent with the HCFA letter on which the Department relied, "have never been promulgated as regulations even though issued in May 1989." *Miller,* 746 F.Supp. at 31. Under these circumstances, it is reasonable that a state court should not construe Section 1396a(k)(2) to include trusts other than those to which it expressly or by clear implication extends. *See Philbrook,* 421 U.S. at 719, 95 S.Ct. at 1901.

As we understand Section 1396a(k)(2), Congress intended to correct a specific abuse. The conference committee report on the provision that became Section 1396a(k)(2) explained that "distributions from grantor trusts, not distributions or principal from non-grantor trusts, such as those established by parents for children" were the problem Congress intended to address. 132 Cong.Rec. H11432 (daily ed.

October 17, 1986 (reprint of conference committee report)). In reporting the legislation of which Section 1396a(k)(2) is a part, the House Committee on Energy and Commerce said: "The Committee does not intend that trusts established solely for the benefit of disabled children, from which the grantor or other individual can under the terms of the trust receive no benefit, be treated as Medicaid qualifying trusts." H.R.Rep. No. 99–265, 99th Cong., 1st Sess., at 72 (1985).

Judge Carrigan's decision in *Miller* emphasizes the narrow purposes for which Section 1396a(k) was enacted and the importance of determining whether a particular transfer in trust is the type of trust the assets of which Congress intended should be considered "available." "The Congressional purpose for prohibiting Medicaid qualifying trusts is the same as that behind banning transfers without fair consideration. Congress sought to prevent wealthy individuals, otherwise ineligible for Medicaid benefits, from making themselves eligible by creating irrevocable trusts in order to preserve assets for their heirs." *Miller,* 746 F.Supp. at 34.

In *Miller,* Judge Carrigan held that (1) incomes of mentally incompetent nursing home patients that were subject to judicially imposed trusts created pursuant to Colorado statute could not be considered "available" to the beneficiaries for purposes of determining eligibility, (2) the court's actions in creating the trusts were not transfers for less than fair market value in violation of state regulations or transfer of resources rules set out in the Medicaid statute, and (3) the trusts were not Medicaid qualifying trusts. In reaching the last of the three holdings, the court noted that the trusts had not been created by the beneficiaries because they neither initiated nor acquiesced in the decision. The *Miller* beneficiaries were incapable of participating in the transfer. Moreover, Judge Carrigan reasoned, the trusts should not be characterized as created by the beneficiaries because of the powers vested in probate courts on behalf of each beneficiary. He noted that "such courts do not act as the plaintiffs themselves. Instead,

these courts are governed by an objective best interest standard. That a court has authority to act in a person's best interest does not indicate that that person has competence to perform the same act on her own behalf." *Id.* at 31.

Judge Carrigan suggested at the outset of his decision that the trusts at issue had been created in response to "a trap created by the interaction of highly technical federal and state statutes and regulations." *Id.* at 20. The trap

> deprives many senior citizens of Medicaid payments for nursing home expenses to which they are otherwise entitled. When their incomes are too low to enable them to pay their own nursing home costs, but too high to qualify for Medicaid benefits, * * * [t]hey are not allowed to pay as much as they can, and have Medicaid pay the balance, but instead are totally disqualified for any Medicaid assistance.

*Id.*

We conclude that the question of whether the trust of which Eric is a beneficiary is a Medicaid qualifying trust within the meaning of Section 1396a(k)(2) presents a factual issue as well as a policy question. The factual question is whether Eric is the grantor of any part of the trust and the policy question is whether, in the event that he is not technically the grantor, he should nonetheless be treated as such in furtherance of the underlying policies of Section 1396a(k)(2). We also conclude that the necessary inquiry involves an examination of the circumstances surrounding the creation of the trust, including the purposes for which it was created. When engaging in this review we look to the whole record to determine whether the Department's decision is supported by substantial evidence. *Akel v. New Mexico Human Servs. Dep't,* 106 N.M. 741, 749 P.2d 1120 (Ct.App.1987). We hold that it is not. *But see In re Welfare of K.S.,* 427 N.W.2d 653, 659–60 (Minn.1988) ("We decline * * * to adopt * * * a case-by-case analysis * * * and conclude instead that a minor's settlement fund is always an available asset for medical assistance eligibility purposes.").

## III. ERIC'S ROLE IN CREATING THE TRUST.

There is nothing in the record to support a finding or conclusion that Eric or his conservator was entitled to any particular portion of the proceeds. The record indicates that his parents and the conservator acted jointly in deciding upon a trust as a vehicle for managing the funds they anticipated as a result of the settlement. To the extent the parents funded the trust with their share of the settlement proceeds, the Department appears to concede that the trust was not a Medicaid qualifying trust. *Accord Hatcher,* 545 So.2d at 402 ("there is no doubt that the trust in question would have been exempted from eligibility considerations if it had been created by appellant's father during his lifetime").

In fact, it is difficult on this record to identify the grantor. The record supports a determination that the trust was created in part by the defendants to the malpractice action. Regarding the annuity, one might argue that the trust was created by the promise of the defendants in the malpractice suit "to pay money or to make a conveyance of property to [Eric's conservator] as trustee * * * *" *See Restatement (Second) of Trusts* § 17, cmt. on Clause (e) (1959); *see also* § 17(e) ("A trust may be created by * * * a promise by one person to another person whose rights thereunder are to be held in trust for a third person."). Regarding the cash, one might argue that the trust was created by Eric's father's transfer of the balance of the lump sum settlement to the conservator. *Id.* at (b) ("A trust may be created by * * * a transfer inter vivos by the owner of property to another person as trustee * * * for a third person"). The trust agreement signed by the conservator, formally assigning the annuity and cash to herself as trustee, might be said to recognize a trust relationship that already existed. *Cf. id.* at (a) ("A trust may be created by * * * a declaration by the owner of property that he holds it as trustee for another person").

The creation of this trust involved multiple grantors. Eric never had unrestricted legal or equitable title to the additional

sums made available, and he himself played no role in the decision to create the trust. We conclude that there is too little in this record to support a determination that Eric was the grantor of the trust in this case.

The record indicates that neither the monthly income of the trust nor the monthly sum provided by the state is sufficient to meet the cost of Eric's medical and related expenses. The trust income appears to be achieving its stated purpose of supplementing a much needed but in fact insufficient amount of public support.

Eric receives approximately $3,000 per month in benefits from the state. In addition to that sum, the trustee testified at the hearing that she had spent $2,100 a month on the average since the date of the settlement on various items for him.

> [B]asic expenses are in several categories. One of the biggest expenses in this is for care-givers, personal care-givers for Eric, that are not covered by the current medicaid program that he's under. As Robert noted this with the stress of being a single parent and the time factor is a need to make a living and so forth. Even though this good coverage from the government program there still needs to be supplemental child care, so a good part of it is going for that. Some of it is going to pay for additional medical expenses which aren't large but they are medications that aren't covered with the insurance. There have been legal fees and business fees associated with the trust. And then therapies have been provided for as we talked about some of the therapies provided under other programs are somewhat minimal and we see, I see Eric as needing some pretty intensive therapy in real counseling, constant working with all this line to reach his potential and so that some of it is going to outside therapies and then for the purchase of equipment.

In this respect, this case is similar to *Miller.* There, too, the trusts that were created allowed the beneficiaries to avoid the "trap" of being too well-off to qualify for Medicaid, yet too poor to pay for the costs of necessary care. We do not believe that Congress drafted Section 1396a(k) to reach such transactions.

We hold that the trust fund is not within the express or implied intent of Congress in enacting Section 1396a(k)(2). We conclude that, under Section 1396a(k)(2), it is not a Medicaid qualifying trust. *See Philbrook,* 421 U.S. at 719, 95 S.Ct. at 1901; *Miller,* 746 F.Supp. at 33.

## IV. CONCLUSION.

The Department's decision to terminate Eric's benefits appears to have been based solely on the trust's availability as a Medicaid qualifying trust. We do not discuss its availability other than under Section 1396a(k). *Cf. In re Welfare of K.S.,* 427 N.W.2d at 659 (court relied on state statutes and rules specifying examples of personal property to be included as well as exempt in determining eligibility and on state rule that " 'local agency must consider as available an asset that a person receives in a tort settlement, whether the settlement is entered into by the person or the person's guardian, that is structured to be paid over a period of time.' ") (quoting Minn. Rule 9505.0061 (1987)). We do note that under the terms of the trust, the conservator has limited discretion in making any distributions to Eric. *See Miller,* 746 F.Supp. at 26–27 (discussing various state court rulings on the availability of trust funds in determining medical eligibility).

Section 1396a(k) does not authorize the Department's exclusion of Eric from eligibility for health care benefits. Therefore, the exclusion was contrary to law. *See Philbrook.* We reverse with directions for the Department to authorize benefits for him. *See* NMSA 1978, § 27-3-4(F)(3) (Repl.Pamp.1989).

IT IS SO ORDERED.

DONNELLY and FLORES, JJ., concur.