No. 72,159

JoAnn Williams, Guardian Ad Litem, for and on behalf of Donna J. Squier, *Appellee*, v. Kansas Department of Social and Rehabilitation Services, *Appellant*.

(899 P.2d 452)

Opinion filed July 14, 1995.

*Reid Stacey*, of the Kansas Department of Social and Rehabilitation Services, argued the cause and was on the briefs for the appellant.

*Timothy P. O'Sullivan*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *John E. Rees II*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

ABBOTT, J.: This appeal involves judicial review of an agency action concerning eligibility for medical benefits. The Kansas Department of Social and Rehabilitation Services (SRS) discontinued Donna J. Squier's Medicaid eligibility due to excess resources. The trial court reversed that determination and SRS appeals. The appeal was transferred to the Supreme Court on this court's own motion pursuant to K.S.A. 20-3018(c).

The facts of this case are not in dispute. Donna J. Squier was injured in a motor vehicle accident in 1988. While being treated for injuries sustained in that accident, she suffered severe and permanent brain damage, rendering her a permanent quadriplegic.

JoAnn Williams, Squier's mother, was appointed guardian ad litem for Squier. Acting in her capacity as guardian ad litem, Williams instituted an action for and on behalf of her ward to recover damages. She also applied for and received medical long-term care benefits under the Medicaid program for her ward.

On August 11, 1992, Williams executed the JoAnn Williams Irrevocable Trust ("Williams trust" or "trust") which was funded by Williams in the amount of $10. Williams is the named grantor of the discretionary trust. Bank IV Kansas, N.A. (Bank IV) is the trustee. Squier and her two minor children, Donielle Squier and Mary Jo Squier, are the trust beneficiaries.

Highly condensed, the 20-page trust agreement provides that "the trustee shall take into consideration the applicable resources and income limitations of any public assistance program for which Donna Jo Squier is eligible when determining whether to make any discretionary distributions." The trust goes on to state that "no part of the corpus of the trust created herein shall be used to supplant or replace public assistance benefits," and that "for purposes of determining Donna Jo Squier's eligibility for such benefits, no part of the principal or income of trust shall be considered available to Donna Jo Squier." The trustee is prohibited from knowingly exercising its discretion in a manner that would prevent Squier from receiving public assistance. The express intent is that no part of the trust income or principal be used to replace public

assistance or in determining Squier's eligibility for public assistance. The purpose of the trust is to provide goods and services in addition to those provided by public assistance.

At the time the trust was created, it was funded entirely with Williams' money. At that time, it did not disqualify Squier. Williams was entitled to create a trust for the benefit of her daughter, and she had a legal right to provide for how it was to be used.

The problem arises because it becomes obvious why the trust was created. The same day the trust was executed, Squier's damages case was settled. The settlement was approved by Ron Rogg, administrative judge of Sedgwick County. Judge Rogg authorized the payment of outstanding medical expenses incurred for Squier's care and the payment of outstanding loans of Squier and repayment of PIP benefits. He also authorized attorney fees for Squier's representation. Judge Rogg then made what at best can only be described as an unusual finding:"The settlement proceeds have not come into the possession or control of Donna J. Squier or her guardian." He then ordered the remaining $1,672,570.63 paid to the trust.

The money placed in the trust was received in a lawsuit brought by the ward's guardian for negligent injuries inflicted on the ward. A release was signed releasing the defendants from liability for the ward's injuries, and Judge Rogg approved that release and the payment of approximately $127,500 in bills and loans incurred on behalf of the ward.

When SRS learned of the trust, it notified Williams that Squier was no longer entitled to Medicaid benefits because SRS considered the trust to be an "available resource" when evaluating Squier's Medicaid eligibility. Williams appealed this decision. The hearing officer found the Williams trust to be a Medicaid qualifying trust (MQT) and thus available for Squier's support, making her ineligible for Medicaid assistance. The hearing officer stated:

"The trust was created with funds received because of injuries and damages sustained by Donna Jo Squier. The trust was created by an individual who had been appointed to serve as guardian ad litem for Donna Jo Squier in the Sedgwick County lawsuit. The funds were Donna Jo Squier's. They were not the trust settlor's funds. They were not the court's funds. They were the property of Donna

Jo Squier. . . . [I]t is clear that the settlor was acting on behalf of Donna Jo Squier, as Donna Jo Squier's legal representative."

Williams then appealed the decision to the State Appeals Committee for SRS, which affirmed the hearing officer's decision.

After exhausting the administrative process, Williams sought judicial review in the district court of Greenwood County. The district court reversed the decision of SRS.

The district court concluded that the Williams trust was not an MQT, disqualifying Squier from Medicaid benefits. The district court stressed that the purpose of the trust was to supplement, not replace, public financial assistance. The district court found that the record was silent as to what role, if any, Squier actually played in the creation of the trust and whether she had the capacity to voluntarily participate in the creation of the trust or in the settlement negotiations, and the record was insufficient to deem Squier as the grantor of the Williams trust. The court also found that Squier never had legal or equitable title to the settlement funds. Finally, the district court found that the trustee actually had no discretion to make distributions to Squier because the trustee was required to maintain Squier's eligibility for Medicaid benefits. The district court ordered that Squier's Medicaid benefits be reinstated without considering the Williams trust as an available resource.

This case involves judicial review of an agency action under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* Our standard of review is statutorily defined. One ground for relief is that the agency has erroneously interpreted or applied the law. K.S.A. 77-621(c)(4).

Background on the federal Medicaid program was recently stated by the Second Circuit Court of Appeals in *Himes v. Shalala,* 999 F.2d 684, 686 (2d Cir. 1993):

"The Medicaid program was enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, 1396a-u (1988) ('Medicaid Act' or 'the Act'), as a cooperative federal-state program designed to provide health care to needy individuals. Although a state is not required to participate in the Medicaid program, once it chooses to do so it must develop a plan that complies with the Medicaid statute and the Secretary's regulations. [Citation omitted.]

"A state, in administering its Medicaid program, must set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under the program. See 42 U.S.C. § 1396a(a)(17). Those standards must take into account 'only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient.' 42 U.S.C. § 1396a(a)(17)(B)."

See *Clark v. Commissioner*, 209 Conn. 390, 394-96, 551 A.2d 729 (1988).

Kansas has elected to participate in the Medicaid program. K.S.A. 39-708c gives the Secretary of SRS the power and duty to determine general policies relating to all forms of social welfare and to adopt rules and regulations therefor. K.S.A. 39-708c(s) requires the Secretary of SRS to develop plans financed by federal funds and/or state funds for providing medical care for needy persons. Pursuant to that statute, the Secretary of SRS adopted regulations found at K.A.R. 30-6-34 *et seq*. SRS has also published the Kansas Public Assistance Manual (KPAM) detailing Medicaid eligibility and benefits.

Only "available" resources are considered in evaluating a Medicaid applicant's eligibility. 42 U.S.C. § 1396a(a)(17)(B) (1988). A trust is considered an available resource if the conditions of an MQT are satisfied.

"(1) In the case of a Medicaid qualifying trust (described in paragraph (2)), the amounts from the trust deemed available to a grantor, for purposes of subsection (a)(17) of this section, is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term 'grantor' means the individual referred to in paragraph (2).

"(2) For purposes of this subsection, a 'Medicaid qualifying trust' is a trust, or similar legal device, *established* (other than by will) *by an individual* (or an individual's spouse) under which *the individual may be the beneficiary* of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise *any discretion with respect to the distribution to the individual.*

"(3) This subsection shall apply without regard to—

(A) whether or not the Medicaid qualifying trust is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this subchapter [42 U.S.C. §§ 1396 *et seq.*] or

(B) whether or not the discretion described in paragraph (2) is actually exercised.

"(4) The State may waive the application of this subsection with respect to an individual where the State determines that such application would work an undue hardship." (Emphasis added.) 42 U.S.C. § 1396a(k) (1988).

This statute was repealed in 1993, but it applies to this case.

SRS contends that the Williams trust satisfies all of the elements of an MQT and it therefore correctly considered the trust as an "available resource" in evaluating Squier's Medicaid eligibility. Williams contends that the trust does not satisfy the requirements of an MQT because it was not established by Squier, it was not established with Squier's funds (a requirement under [k][2]'s Kansas counterparts, K.A.R. 30-6-106[c] and KPAM § 3200[17], and the trustees are precluded from exercising any discretion under the trust terms until public benefits have been exhausted. The trial court agreed with Williams and held that the Williams trust was not an MQT.

## I. "INDIVIDUAL"

Williams first argues that the trust was not established by the individual (Squier) who applied for Medicaid benefits. This argument is incorrect. Although the trust was established in form by Williams, it was created with Squier's funds and was established by her. In *Forsyth v. Rowe*, 226 Conn. 818, 826, 629 A.2d 379 (1993), the Connecticut court stated: "A trust is established by the person who provides the consideration for the trust even though in form it is created by someone else." See *In re Estate of Hickey*, 263 Ill. App. 3d 658, 660, 635 N.E.2d 853, 855 (1994), *cert. denied* ___ U.S. ___, 130 L. Ed. 2d 1068 (1995); 76 Am. Jur. 2d, Trusts § 55. Moreover, implicit in the term "individual" is a person acting as an individual's legal representative where the individual is incapable of acting on his or her own.

JoAnn Williams was appointed guardian ad litem for the purposes of Squier's damages action, and Williams also appears in this case as Squier's guardian ad litem. Williams concedes that she established the Williams trust in her capacity as guardian ad litem for Squier. She also concedes that the Williams trust was created

in contemplation of a settlement in the damages action. The trust was initially funded with $10, Williams' personal funds. We are aware that even a peppercorn can be consideration and that $10 can be consideration. That is not the issue in this case. The corpus of the trust here rapidly grew to more than $1.6 million, funded entirely, except for the initial $10, with proceeds from Squier's damages settlement.

The creation of the Williams trust and the payment of the damages proceeds directly into the trust was an attempt to preserve Squier's Medicaid eligibility in order to preserve the $1.6 million settlement for her children. This is precisely the situation § 1396a(k)(2) was designed to limit.

Williams argues that Squier never had a legal or equitable interest in the settlement proceeds; therefore, the Williams trust was not funded by Squier. The trial court agreed. We do not. The settlement proceeds may not have come into Squier's hands directly, but the proceeds were hers nonetheless. The proceeds were derived from her cause of action in the damages case. That her representative in that case, Williams, agreed to a settlement in which the funds were placed directly into the Williams trust, does not alter the fact that the proceeds were Squier's funds.

Several other courts, under facts nearly identical to those in the case at bar, have reached similar conclusions.

*Forsyth*, 226 Conn. 818, involved facts identical to the case at bar. Gregory Forsyth sustained injuries in a 1988 car accident which left him unable to care for himself. His father was appointed conservator of Forsyth's estate and person. Forsyth's father, acting on Forsyth's behalf, entered into a settlement agreement with State Farm in which State Farm paid $195,000 into the Gregory L. Forsyth Trust in return for a release of Forsyth's tort claim from the car accident. Forsyth's application for Medicaid benefits was denied because the funds in the trust were deemed available to Forsyth. 226 Conn. at 820-21.

Forsyth's father argued that the trust was not an MQT because it was established by him as Forsyth's conservator and not by Forsyth. The Connecticut court disagreed, holding that for purposes

of 42 U.S.C. § 1396a(k) Forsyth was both the grantor and the beneficiary of the trust. The court's reasoning is persuasive:

"The trust in this case was funded with the proceeds from the settlement of the personal injury claim brought by [Forsyth's father] solely on Gregory's behalf. Gregory provided the funds with which the trust was established when, through [his father], his claim was settled in return for a payment to the trust. Gregory, therefore, is the individual who established the trust.

". . . It is clear . . . from the purpose and history behind § 1396a (k) that a Medicaid qualifying trust may also be 'established . . . by an individual' when that individual, acting through his conservator, provides the consideration for the trust.

". . . The plaintiff's narrow reading of the words 'established . . . by an individual' discloses an ambiguity in the language of § 1396a (k) as applied to the facts of this case. It would be anomalous to construe the statute to allow a Medicaid applicant to accomplish through a conservator or guardian acting on his behalf what the law prevents that applicant from doing on his own.

"Our conclusion reflects the legislative concern that the Medicaid program not be used as an estate planning tool. The Medicaid program would be at fiscal risk if individuals were permitted to preserve assets for their heirs while receiving Medicaid benefits from the state. Congress enacted the Medicaid qualifying trust provision as an addition to the 'provisions designed to assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available.' H. Rep. No. 99265, 99th Cong., 1st Sess. 71 (1985).

. . . .

"Our holding that a trust established by the person who furnishes the consideration is a Medicaid qualifying trust for purposes of § 1396a (k) comports with the present Congressional mandate delineating the assets that are available to a potential Medicaid recipient. To permit Gregory to collect Medicaid benefits from the taxpayers when $195,000 of his assets are sheltered in a trust, all of which could potentially go to his heirs, would violate the spirit and intent of the Medicaid program." 226 Conn. at 826-30.

*Thomas v. Arkansas Department of Human Resources*, 319 Ark. 782, 894 S.W.2d 584 (1995), also involved similar facts, except that the settlement proceeds were received from a workers compensation claim and the employer was designated as the grantor of the trust. The settlement proceeds, $270,000, were placed directly into the trust by the employer. 319 Ark. at 784. The court pointed to the Arkansas public policy that trusts not be created and used to sequester resources for the purposes of qualifying otherwise inel-

igible individuals for Medicaid assistance. 319 Ark. at 788. The court held that the trust was an MQT.

In *Romo v. Kirschner*, 181 Ariz. 239, 889 P.2d 32 (Ariz. App. 1995), the trust was created by the defendant in a personal injury action and funded with $150,000 from the personal injury settlement. In holding that the trust was an MQT, the Arizona court recognized the intent behind section (k) to close a loophole in the eligibility criteria and insure that persons receiving Medicaid benefits have not transferred assets which should be used to pay for their own care before Medicaid benefits are made available. 181 Ariz. at 241-42. The court rejected an argument that the trust in question was established or approved by the court at the request of the individual's conservator, finding that the trust was in reality established by the individual acting through his conservator. The court also pointed out the potential for unfairness should a contrary result be reached: "[A] beneficiary who is represented by a conservator and has his trust approved by a court may preserve his assets, while one who lacks a conservator and court approval loses them." 181 Ariz. at 242.

*Barham v. Rubin*, 72 Hawaii 308, 816 P.2d 965 (1991), also involved similar facts where a Colorado probate court having jurisdiction over a personal injury action deemed itself to be the settlor of a trust. The Hawaii court recognized the purpose of Medicaid to provide assistance to those whose income and resources are inadequate to meet the costs of necessary medical services and concluded: "To permit Barham to collect public assistance benefits while he is receiving and potentially accumulating $3000 a month, all of which may go to his heirs, would violate the spirit and intent of the Medicaid laws." 72 Hawaii at 312.

Cases involving inheritance, rather than settlement proceeds, placed in a trust are also persuasive. *Ronney v. DSS*, 210 Mich. App. 312, 532 N.W.2d 910, (1995), includes a helpful discussion of the interpretation of section (k)(2). In *Ronney*, the plaintiff inherited $50,000 which her niece, as her legal guardian, placed in a trust. The court held that a trust established by a legal guardian is an MQT, relying on the interpretation of section (k)(2) by the

Secretary of the Department of Health and Human Services, through the Health Care Financing Administration (HCFA):

"In its State Medicaid Manual, the HCFA has codified its . . . interpretation in the following manner:

An 'individual' is the person who both establishes the trust (or whose spouse establishes the trust) and is beneficiary of the trust. A trust that is established by an individual's guardian or legal representative acting on the individual's behalf, falls under the definition of a Medicaid qualifying trust. If an individual is not legally competent, for example, a trust established by his legal guardian (including a parent) using the individual's assets can be treated as having been established by the individual, since the individual could not establish the trust for himself.

[Healthcare Financing Administration, Department of Health and Human Services, State Medicaid Manual, § 3215.1 (May 1989).]" 210 Mich. App. at 316.

The *Ronney* court agreed with the *Forsyth* court that a trust is established by the person who provides the consideration for the trust. Therefore, the court read section (k)(2) as including guardian-established trusts as MQTs.

Other cases reaching similar conclusions include *Hatcher v. Dept. of Health & Rehab. Serv.*, 545 So. 2d 400 (Fla. Dist. App. 1989) (upon father's death, mentally retarded 30-year-old became entitled to annuity benefits which were placed by legal guardian into a trust; court held trust was an MQT); *Striegel v. S.D. Dept. of Social Services*, 515 N.W.2d 245 (S.D. 1994) (upon father's death, mentally incompetent adult inherited money and property which years later were placed with court approval into a trust by legal guardian; court held trust was an MQT). See *In re Johannes Trust*, 191 Mich. App. 514, 479 N.W.2d 25 (1991).

Williams relies on *Kegel v. State*, 113 N.M. 646, 830 P.2d 563 (Ct. App. 1992). There, a settlement from a malpractice action provided for payments made jointly to the seven-year-old disabled Medicaid beneficiary's conservator, his parents, and their attorneys. The conservator established a trust with some of the funds. Placing the burden on the state department of human services to prove that the child was no longer eligible for Medicaid benefits by showing that the trust was an MQT, the court found the evidence insufficient to prove that the child was the grantor of the trust.

*Kegel* is distinguishable from the case at bar. In *Kegel*, the monies with which the trust was funded were payable to both the child and his parents, with no distinction as to what portion of the settlement proceeds belonged to the parents and what portion was the child's. Here, Squier was the sole plaintiff in the damages action. The settlement proceeds were hers alone. Moreover, the reasoning of *Forsyth* and the other cases discussed above is more persuasive.

Williams also cites *Trust Co. of Okl. v. State ex rel. DHS*, 825 P.2d 1295 (Okla. 1991), in arguing that a trust created by an individual's legal representative is not legally tantamount to a trust established by the individual for purposes of Medicaid eligibility. *Trust Co.* did not address whether the trust was an MQT under section (k) except in a footnote. In the footnote, the court concluded summarily that the trust was not an MQT because the settlor was the tortfeasor rather than the beneficiary. 825 P.2d at 1302 n.31. The *Trust Co.* facts are nearly identical to those in the case at bar, but the court's failure to address the MQT issue more extensively limits the persuasiveness of its decision.

Williams also relies on *Miller v. Ibarra*, 746 F. Supp. 19 (D. Colo. 1990), in which Colorado probate courts had approved creation of trusts in favor of four mentally incompetent nursing home patients. The federal district court held that the trusts were not MQTs because they were not created by the Medicaid beneficiaries. *Miller* predates all of the cases discussed above holding that the trusts were MQTs except *Hatcher*. The court distinguished *Hatcher* as relying on Florida law to conclude that the guardian was acting in place of the incompetent person. The court also distinguished *Hatcher* because the *Hatcher* trust involved not only income but also principal in excess of $10,000. 746 F. Supp. at 3334. For these same reasons, *Miller* is distinguishable from the case at bar. Here, the trust is more like the one found in *Hatcher* than the ones in *Miller*. Significantly, the *Miller* court pointed out that the trusts at issue had no remaindermen; rather, any remnants of the income would go to the Colorado Department of Social Services. 746 F. Supp. 34. Here, conversely, the remnants of the Williams trust will go to Squier's children, not to the State. For these reasons, *Miller* is not persuasive.

We follow the reasoning of *Forsyth, Ronney,* and the other cases holding that trusts established by an individual's legal representative with the individual's own funds are established by the "individual." The Williams trust is precisely the situation Congress protected against by enacting 42 U.S.C. § 1396a(k). Here, in anticipation of receiving some $1.6 million from a damages settlement, a trust was created in an attempt to preserve Squier's Medicaid eligibility. Although the trust was in form created by Williams; it was funded by Squier and therefore established by her.

## II. DISCRETION

Williams also argues that the third requirement of an MQT, that the trustee have discretion with respect to distributions to the individual, is not satisfied. This argument is incorrect.

An argument similar to this was rejected by the Connecticut Superior Court in *Forsyth v. Rowe,* 1995 WL 152124 (1995), after the Connecticut Supreme Court remanded the case for a determination of the extent of the trustee's discretion:

"The plaintiff argues that the funds in the trust cannot be deemed available to Gregory because the trustee does not have discretion to use the trust funds to pay for basic support which is available from any source, including state or federal benefits. In *Estate of Wallace v. Director,* 628 S.W.2d 388, 389 (Mo. App. 1982), the court considered a similar argument and stated:

> The defect in the logic of this argument lies in the fact that the appellant is asking the Division to premise its determination of claimant's need on the assumption that claimant will be entitled to assistance. Entitlement to assistance, however, is the end product of the Division's inquiry; it may not be assumed as the first step.

"Based on this court's reading of the trust agreement, the trustee or trust advisory committee had the discretion to make or withhold payment in any amount, and had the discretion to invade the entire principal of the trust. Therefore, this court finds that the hearing officer was correct when he found that under 42 U.S.C. § 1396a(k) the entire corpus of the trust must be considered available to Gregory for purposes of determining eligibility for Medicaid." 1995 WL 152124 at 3.

A similar rationale is set forth by SRS here. If Medicaid is not available to Squier, the trustee has clear discretion to pay amounts from the income or principal of the Williams trust for Squier's support. In addition to *Estate of Wallace,* 628 S.W.2d 388 (Mo.

App. 1982), SRS cites *Gulick v. Dept. of Health & Rehab. Serv.*, 615 So. 2d 192 (Fla. Dist. App. 1993). Williams, conversely, attempts to distinguish *Estate of Wallace* because the claimant was not only the beneficiary of the trust, but also the grantor and co-trustee. Regardless, the *Estate of Wallace* rationale is persuasive.

The Williams trust expressly states that the trust is intended to supplement, not replace, public assistance. The trustee is required to seek public assistance and may not distribute income or principal in a manner that would make Squier ineligible for public assistance. However, as in *Estate of Wallace*, Williams' argument presupposes that Squier is eligible for public assistance. If Squier is ineligible for Medicaid, the entire corpus of the Williams trust is available for Squier's support. The trust agreement clearly gives the trustee the discretion to distribute from both the income and the principal such amounts as it deems advisable for Squier's support. That the trustee is required to seek public assistance for Squier and that the trustee may not knowingly distribute amounts which would render Squier ineligible for public assistance do not limit the discretion of the trustee should Squier be ineligible for public assistance. This satisfies the "discretion" requirement of § 1396a(k)(2).

## III. RECENT CHANGES

Williams also points to a 1993 change in the MQT statute in arguing for a strict interpretation of the word "individual" as it is used in 42 U.S.C. § 1396a(k)(2). In 1993, the Omnibus Budget Reconciliation Act (OBRA-93) repealed 42 U.S.C. § 1396a(k). The MQT statute now appears at 42 U.S.C. § 1396p(d) (1993), which states in pertinent part as follows:

"(2)(A) For purposes of this subsection, an individual shall be considered to have established a trust if assets of the individual were used to form all or part of the corpus of the trust and if any of the following individuals established such trust other than by will:

(i) The individual.

(ii) The individual's spouse.

(iii) A person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse.

(iv) A person, including any court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse.

. . . .

(C) Subject to paragraph (4), this subsection shall apply without regard to—
(i) the purposes for which a trust is established,
(ii) whether the trustees have or exercise any discretion under the trust,
(iii) any restrictions on when or whether distributions may be made from the trust, or
(iv) any restrictions on the use of distributions from the trust.
(3)(A) In the case of a revocable trust—
(i) the corpus of the trust shall be considered resources available to the individual,
(ii) payments from the trust to or for the benefit of the individual shall be considered income of the individual, and
(iii) any other payments from the trust shall be considered assets disposed of by the individual for purposes of subsection (c) of this section.
(B) In the case of an irrevocable trust—
(i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income—
(I) to or for the benefit of the individual, shall be considered income of the individual, and
(II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c) of this section; and
(ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of the establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c) of this section, and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date."

Williams argues that the Congressional changes alter the former MQT law by closing loopholes in the former statute. The trial court agreed, relying on the general presumption that the legislature, in amending a statute, intends to change the law as it existed prior to the amendment.

SRS argues that the changes were only to clarify, not alter, the MQT statute. We agree. In this case, any presumption that Congress intended to change MQT law is inapplicable. Although the former statute used only the term "individual" and did not specify that the term "individual" includes persons acting on behalf of the

individual, the amendment including that definition of "individual" does not constitute a change in the law.

In summary, we hold that the Williams trust is an MQT and therefore an "available resource" in evaluating Squier's Medicaid eligibility. SRS did not erroneously interpret the law.

Under 42 U.S.C. § 1396a(k)(1), the maximum amount of payments permitted under the terms of the trust, assuming the full exercise of discretion by the trustee, are deemed to be "available." The Williams trust authorizes the trustee in its discretion to make payments from both the income and the principal of the trust. Therefore, the entire corpus of the Williams trust is considered "available" to Squier.

Reversed.