(947 P.2d 45)
No. 76,866
No. 76,867

In the Matter of the Guardianship and Conservatorship of
JAMES RICHARD WATKINS
and
In the Matter of the Guardianship and Conservatorship of
ROBERT VIRGIL WATKINS.

Opinion filed October 24, 1997.

*Martin R. Ufford*, of Redmond & Nazar, L.L.P., of Wichita, for appellant.

Before GERNON, P.J., ROYSE and MARQUARDT, JJ.

GERNON, J.: This is an appeal by a conservator from a district court order which denied the establishment of irrevocable trusts for two conservatees.

The issue on appeal is whether Kansas conservatorship law, which prohibits a conservator from making decisions regarding the distribution of a conservatee's property after death, conflicts with 42 U.S.C. § 1396p(d)(4)(A) (1994), which provides that an irrevocable trust established in compliance with the statute must provide that upon the death of the recipient/beneficiary, the remaining

trust assets, if any, be used to reimburse the State to the extent the beneficiary had received Medicaid benefits.

The conservator, Holly Potelle, sought to provide in each trust that upon a beneficiary's death, any remaining trust assets would be used to reimburse the State of Kansas to the extent that a beneficiary had received Medicaid funds. We note that current rules permit the retention of some funds of a conservatee for personal and other like expenses.

The district court ruled that Kansas law prohibits a conservator from disposing of a conservatee's assets after the death of a beneficiary/conservatee.

Potelle contends that recent federal law preempts state law on this issue and allows her to do what the court did not. Hence, this appeal followed.

The conservatees, James Richard Watkins and Robert Virgil Watkins, are adult individuals under age 65 and are disabled as defined in 42 U.S.C. § 1382c(a)(3) (1994). As such, they are eligible for Medicaid assistance.

In January 1995, Potelle established two irrevocable trusts, one for the benefit of each conservatee, each funded with $28,000 inherited from their deceased father. The monies funding the trusts were received by Potelle in her capacity as conservator. The provisions of each trust are identical.

The Department of Social and Rehabilitation Services (SRS) became aware of the James Richard Watkins trust in the summer of 1995 and denied James further benefits because the trust assets represented "available" resources in excess of the maximum amount allowed under the Kansas Medicaid eligibility requirements. SRS reinstated James' Medicaid benefits after the conservator revised the trust instrument to include a provision, in accordance with 42 U.S.C. § 1396p(d)(4)(A), that provides for reimbursement to the State after James' death for any Medicaid benefits paid on his behalf during his lifetime.

The conservator filed petitions with the Probate Department of the Sedgwick County District Court, requesting approval of the establishment and funding of each trust and an accounting reflecting the transfer of the conservatorship funds into each trust.

The district court denied the petitions on the ground that a Kansas conservator has no authority to establish such a trust. The district court relied on *In re Estate of Briley*, 16 Kan. App. 2d 546, 825 P.2d 1181 (1992). The court found that the federal amendment was "nothing more than recognition legislation at best." The court noted that "an irrevocable trust would deny a Conservatee access to his or her funds in the event of a restoration to capacity—a not uncommon occurrence." The court ordered the conservator to transfer the "trust" funds back into the original conservatorship accounts.

Potelle contends that the rule in *Briley* has been preempted by federal law.

Justice Abbott, writing in *Williams v. Kansas Dept. of SRS*, 258 Kan. 161, 164-65, 899 P.2d 452 (1995), stated:

" 'The Medicaid program was enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, 1396a-u (1988) ("Medicaid Act" or "the Act"), as a cooperative federal-state program designed to provide health care to needy individuals. Although a state is not required to participate in the Medicaid program, once it chooses to do so it must develop a plan that complies with the Medicaid statute and the Secretary's regulations. [Citation omitted.]

" 'A state, in administering its Medicaid program, must set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under the program. See 42 U.S.C. § 1396a(a)(17). Those standards must take into account "only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient." 42 U.S.C. §1396a(a)(17)(B).' [quoting *Himes v. Shalala*, 999 F.2d 684, 686 (2d Cir. 1993)].

"See *Clark v. Commissioner*, 209 Conn. 390, 394-96, 551 A.2d 729 (1988).

"Kansas has elected to participate in the Medicaid program. K.S.A. 39-708c gives the Secretary of SRS the power and duty to determine general policies relating to all forms of social welfare and to adopt rules and regulations therefor. K.S.A. 39-708c(s) requires the Secretary of SRS to develop plans financed by federal funds and/or state funds for providing medical care for needy persons. Pursuant to that statute, the Secretary of SRS adopted regulations found at K.A.R. 30-6-34 *et seq.* SRS has also published the Kansas Public Assistance Manual (KPAM) detailing Medicaid eligibility and benefits.

"Only 'available' resources are considered in evaluating a Medicaid applicant's eligibility. 42 U.S.C. § 1396a(a)(17)(B)."

In 1985, Congress enacted 42 U.S.C. § 1396a(k) (Supp. V 1987), which closed a "loophole" in Medicaid that allowed individuals to

set up certain trusts to preserve assets and at the same time still be eligible for Medicaid benefits. Section 1396a(k) stated that trust assets were available to the extent the trustee had the discretion to distribute the trust assets, regardless of whether any such distributions were made. Such a trust was called a "Medicaid qualifying trust" (MQT). Contrary to what the name implies, the assets contained in an MQT disqualified the individual for benefits to the extent the trust assets exceeded eligibility limits. See *Williams*, 258 Kan. at 164-66.

In 1993, Congress enacted the Omnibus Budget Reconciliation Act of 1993 ("OBRA 93") which repealed 42 U.S.C. § 1396a(k). *Williams*, 258 Kan. at 173. The MQT statute, as it now appears at 42 U.S.C. § 1396p(d), provides in pertinent part:

"(1) For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter, subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by such individual.

"(2)(A) For purposes of this subsection, an individual shall be considered to have established a trust if assets of the individual were used to form all or part of the corpus of the trust and if any of the following individuals established such trust other than by will:

(i) The individual.

(ii) The individual's spouse.

(iii) A person, including any court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse.

(iv) A person, including any court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse.

. . . .

"[3](B) In the case of an irrevocable trust—

(i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income—

(I) to or for the benefit of the individual, shall be considered income of the individual, and

(II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c) of this section; and

(ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the

individual for purposes of subsection (c) of this section, and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date.

"(4) *This subsection shall not apply to any of the following trusts:*

(A) *A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter."* (Emphasis added.)

The statutory language recognizes and excepts the type of trust funds at issue in this case from consideration when determining the resources available to a Medicaid recipient. However, to qualify for the exception, the trust instrument presumably must contain language providing that the State will be reimbursed upon the beneficiary's death for all Medicaid benefits received. Under Kansas common law, a conservator has no power or authority to dispose of a conservatee's property after death. See *In re Estate of Briley*, 16 Kan. App. 2d 546, Syl. ¶ 3.

We note that the funds involved are distributions from the estate of the father of the conservatees. We note further that SRS approved the trusts and ruled the assets exempt for the purpose of determining Medicaid eligibility.

Obviously, the intent here, by establishing the trusts, was to shelter the inheritance for the purpose of Medicaid eligibility.

Each trust contains a provision for termination upon the death of the beneficiary and for Medicaid reimbursement.

To date, the only reported decision to interpret the 1993 amendment at issue in this case is *Matter of Moretti*, 159 Misc. 2d 654, 606 N.Y.S.2d 543 (1993). In *Moretti*, the mother and conservator of Michael Moretti filed a petition for reargument with the New York Superior Court after her petition to establish an irrevocable trust on behalf of her disabled minor son was denied on the grounds that such a trust was an MQT and could not be used to shelter funds from consideration when determining Michael's eligibility for benefits. Upon reargument, the court vacated its prior decision in light of the 1993 amendment, finding that "OBRA '93

now makes clear that the disabled person's assets may be transferred to a supplemental needs trust for his or her own benefit where the requisites of 42 U.S.C. § 1396p(d)(4)(A) are met." 159 Misc. 2d at 661.

We do not disagree with the trial court's interpretation of *Briley*. We simply conclude that the facts in *Briley* and the facts here are so different as to render *Briley* irrelevant for the purposes of this case.

The term "legal guardian" as set forth in 42 U.S.C. § 1396p (d)(4)(A) includes both conservators and guardians under the facts of this case.

We further conclude that the reasoning in *Moretti* is sound and that the trusts sought to be established here are contemplated both under federal law and state law.

We recognize the added responsibility placed on Kansas courts, given this ruling, to both scrutinize a trust to insure compliance with both state and federal law and to require accountings to insure that the trust assets are not wasted or dissipated contrary to law. For example, in the case before us, certain contributions to charitable organizations would certainly be questionable.

Reversed and remanded with directions to establish the irrevocable trusts.