No. 95,132

In the Matter of LARRY L. MYERS, *Respondent.*

(127 P.3d 325)

Opinion filed February 3, 2006.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* disciplinary administrator, was with him on the formal complaint for the petitioner.

*G. Craig Robinson* argued the cause for the respondent, and *Larry L. Myers,* respondent, argued the cause pro se.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator's office against Larry L. Myers, of Garden City, an attorney admitted to the practice of law in Kansas in 1978. The formal complaint against respondent alleges violations of KRPC 1.1 (2005 Kan. Ct. R. Annot. 356) (competence) and KRPC 1.5 (2005 Kan. Ct. R. Annot. 397) (fees).

A hearing before the panel of the Kansas Board for Discipline of Attorneys was held on July 28, 2005, in Topeka, Kansas. Respondent appeared in person and through counsel, G. Craig Robinson. The panel made the following findings of fact:

"1.   Larry L. Myers (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. 09793. His last registration address with the Clerk of the Appellate Courts of Kansas is Garden City, Kansas. The Respondent was admitted to the practice of law in the state of Kansas on April 10, 1978.

"2.   In February, 1996, Robert and Betty Brown retained the Respondent for estate planning purposes. Mr. and Mrs. Brown wanted to provide for the surviving spouse, avoid paying estate taxes, and preserve their assets in the event that nursing home care was required. Mrs. Brown was nine years older than Mr. Brown. The parties assumed that Mr. Brown would survive Mrs. Brown and that Mrs. Brown would require nursing home care.

"3.   In July, 1996, Mr. and Mrs. Brown's estate was worth approximately $465,000 and included IRA accounts, mutual funds, checking and saving accounts, and real property.

"4.   In 1996, the Respondent informed Mr. and Mrs. Brown that the best way to protect their assets and ensure that their children inherited their estate was to provide gifts to their children. Mr. and Mrs. Brown did not want to provide gifts

to their children. Mr. and Mrs. Brown wished to retain their property for their benefit during their lifetimes. The Respondent then recommended to Mr. and Mrs. Brown that they split their assets and place them in revocable trusts that would become irrevocable upon the death or incapacity of the respective grantor. Placement of assets into the revocable trusts would not, however, preserve the assets in the event nursing home care was required because Congress revised the Medicaid laws that deal with trusts in 1993 to include such trust assets in determining Medicaid eligibility.

"5.   Mr. and Mrs. Brown agreed and the Respondent prepared trust documents for Mr. Brown and for Mrs. Brown.

"6.   Mrs. Brown's health deteriorated and she was placed in a nursing facility.

"7.   Mr. Brown became ill with cancer. On October 27, 1999, Mr. Brown died. Following Mr. Brown's death, Patricia Willis, one of Mr. and Mrs. Brown's children, met with the Respondent regarding her father['s] estate. As a result of the meeting, the Respondent sent Ms. Willis a letter

"8.   In the letter, the Respondent stated that the steps necessary to administer Mr. Brown's estate included: 'Prepare and file a Kansas Estate Tax Return, which is due nine (9) months after death. Any Kansas Estate taxe [*sic*] owed will be payable at that time.' While it was necessary for the Respondent to determine the total value of Mr. Brown's estate to determine whether estate tax would be owing, it was not necessary to prepare and file a Kansas estate tax return because Mr. Brown's estate fell below the threshold amount.

"9.   For the work that the Respondent performed following Mr. Brown's death, including preparing the inventory and the Kansas estate tax return, the Respondent charged Mr. Brown's estate $4,250, for a total of 43.5 hours. The Respondent billed in whole hour increments, save one entry.

"10.   During the hearing on this matter, a member of the Hearing Panel questioned the Respondent regarding his billing practices as follows:

'Q.  [By Mr. Sear] In reviewing these bills, all of the time entries are in full one hour increments except for an entry on March 1, 2000, for three and one-half hours. Was it your practice to bill in full one hour increments in this time frame?

'A.  [By the Respondent] Yes.

'Q.  So regardless of the amount of time that you spent on a matter, if you spent less than an hour on it, you still billed for an hour?

'A.  Well, if we spent three-fourths of an hour, I would bill for an hour, yes.

'Q.  What if you spent one-quarter of an hour?

'A.  I would not bill for an hour.

'Q.  What was the smallest time spent in this time frame that you would bill for a full hour?

'A.  I'd say three-fourths of an hour.

'Q.  Is that your current practice?

'A.  Yes.'

"11. Following Mr. Brown's death and after Mrs. Brown's trust was depleted, Ms. Willis applied for Medicaid assistance for her mother. However, the Kansas Department of Social and Rehabilitation Services denied the application, concluding that assets of Mr. Brown's trust could be used to pay for Mrs. Brown's nursing home care.

"12. The trust document, prepared by the Respondent for Mr. Brown, did not accomplish what it was intended to accomplish. The trust document did not shield Mr. Brown's assets from the expense of Mrs. Brown's nursing home care.

"13. After SRS denied the Medicaid application, on September 19, 2001, Ms. Willis contacted the Respondent for advice. Despite the well established law regarding Medicaid eligibility, evidenced by the 1993 Medicaid amendment and the decision of the Kansas Supreme Court in *Williams v. Kansas Dept. of SRS*, 258 Kan, 161, 899 P.2d 452 (1995), the Respondent recommended that Ms. Willis appeal the agency's decision. The Respondent retained Jim Lawing, an attorney practicing in Wichita to assist him with the appeal. However, on appeal, the agency's decision was affirmed. The Respondent billed Ms. Willis $3,600 for his work on the appeal.

"14. On April 26, 2002, Ms. Willis wrote to the Disciplinary Administrator complaining of the Respondent's representation of Mr. and Mrs. Brown, and Mr. Brown's estate. Then, on May 15, 2003, Ms. Willis supplemented her complaint.

"15. Mrs. Brown died in 2003, after approximately $30,000 of Mr. Brown's trust assets were used to pay for Mrs. Brown's care.

"16. Ms. Willis retained Robert E. Johnson, II, to review the Respondent's representation of Mr. and Mrs. Brown and their estates. Mr. Johnson wrote to the Respondent and suggested that the Respondent settle Ms. Willis' claims by paying Mr. Brown's estate $53,934.37. Thereafter, Mr. Johnson and the Respondent negotiated a settlement. To settle Ms. Willis' claim, the Respondent paid $10,000 and wrote off the attorney fee bill of $3,600 that remained unpaid."

Based on those Findings of Fact, the panel concluded as follows:

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact and the Respondent's stipulations, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1 and KRPC 1.5, as detailed below.

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent Mr. and Mrs. Brown when he created trust documents that failed to accomplish the goals of the estate plan and when he encouraged Ms. Willis to file an appeal of the SRS agency action denying Mrs. Brown's application for Medicaid benefits. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. The fee that an attorney charges for legal services must be reasonable. KRPC 1.5. It is unreasonable to charge a client a fee for performing a legal service that is unnecessary. In this case, the Respondent charged Mr. Brown's estate a fee for performing work that was not required. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.5 in this regard.

"4. Additionally, it is unreasonable to bill in one-hour increments when one-hour of work is not performed. In *In re Scimeca*, 265 Kan. 742, 760 (1998), the Kansas Supreme Court stated:

'We agree with the Deputy Disciplinary Administrator that billing for quarter hours is not a violation if that time is spent on a client's business. The violation is in not spending the time billed to the client on the client's business. Here, respondent clearly billed for time not spent in representing the client. He concedes that his billing practices were improper, and although he claims it was done in ignorance, it is nevertheless a violation of the MRPC.'

The Respondent testified at the hearing held in this matter that he billed Ms. Willis in one-hour increments even when one-hour of work was not completed. The Respondent also testified that he continues to use this billing practice to date. In this case, it is impossible to know exactly how much time the Respondent spent working in behalf of Mr. and Mrs. Brown and Mr. Brown's estate, given the Respondent's billing practices. However, as a matter of law, the Hearing Panel concludes that billing in one-hour increments when one-hour is not spent working on a matter is an improper billing practice and is in violation of KRPC 1.5."

## RECOMMENDED DISCIPLINE

### The panel applied the ABA Standards as follows:

"In making the recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide competent representation and to charge a reasonable fee.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual harm to his clients.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Dishonest or Selfish Motive. In his letter to Ms. Willis, the Respondent blatantly misstated the law by stating that filing a Kansas estate tax return was man-

datory. The Hearing Panel concludes that the intentional misstatement of the law was a dishonest act and motivated by selfishness.

"Vulnerability of Victim. Mr. Brown, Mrs. Brown, and their heirs were vulnerable to the Respondent's misconduct. Mr. and Mrs. Brown went to the Respondent to plan their estates. They relied on his experience and expertise in planning for their future. However, the documents the Respondent prepared failed to accomplish their goals. . . . .

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1978. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of approximately 20 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstance present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Reprimand is generally appropriate when a lawyer:

   (a) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or

   (b) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client. Standard 4.53.'

'Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client. Standard 4.63.'

"The Deputy Disciplinary Administrator recommended that the Respondent be censured by the Kansas Supreme Court and that the censure be published in the Kansas Reports. The Respondent recommended that the Respondent be censured by the Kansas Supreme Court. The Respondent, however, urged that the censure not be published in the Kansas Reports.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be censured by the Kansas Supreme Court. The Hearing Panel further recommends that because of the persuasive aggravating factors, the censure be published in the Kansas Reports."

The respondent has filed no exceptions herein. Contrary to the hearing panel's finding, we believe, based on respondent's comments before this court, that the respondent is remorseful of his

handling of the Browns' estate matters. However, we conclude that the findings of the hearing panel are supported by clear and convincing evidence and adopt the findings, conclusions, and recommendation of the hearing panel, although a minority of the court would impose a private censure.

IT IS THEREFORE ORDERED that the respondent, Larry L. Myers, be and he is hereby censured in accordance with Supreme Court Rule 203(a)(3) (2005 Kan. Ct. R. Annot. 247) for the violations found herein.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of this action be assessed to respondent.

DAVIS, J., not participating.

MARQUARDT, J., assigned.