[833 NE2d 1204, 800 NYS2d 529]

In the Matter of MICHAEL H. FEINBERG, as Surrogate of Kings County, Petitioner. STATE COMMISSION ON JUDICIAL CONDUCT, Respondent.

Argued June 9, 2005; decided June 29, 2005

**POINTS OF COUNSEL**

*Greenberg Traurig, LLP,* Albany (*Henry Greenberg* and *Cynthia Evans Neidl* of counsel), for petitioner. I. The Court has plenary power to review the facts and the law. (*Matter of Greenfield,* 76 NY2d 293; *Matter of Quinn v State Commn. on Jud. Conduct,* 54 NY2d 386.) II. Surrogate Feinberg's admitted error of law in awarding fees without obtaining affidavits of legal services does not constitute judicial misconduct. (*Matter of Reeves,* 63 NY2d 105; *Matter of Sardino v State Commn. on Jud. Conduct,* 58 NY2d 286; *Matter of Bauer,* 3 NY3d 158; *Matter of Roberts,* 91 NY2d 93; *Matter of Hamel,* 88 NY2d 317; *Matter of Esworthy,* 77 NY2d 280; *Matter of McGee v State Commn. on Jud. Conduct,* 59 NY2d 870; *Matter of LaBelle,* 79 NY2d 350.) III. Surrogate Feinberg's award of uniform fees without case-by-case weighing of statutory factors does not constitute judicial misconduct. (*Matter of LaBelle,* 79 NY2d 350; *People v Mobil Corp.,* 48 NY2d 192; *Matter of Jakobson,* 304 AD2d 579; *Matter of La Corte,* 7 AD3d 909; *Matter of Potts,* 213 App Div 59, 241 NY 593; *Matter of Freeman,* 40 AD2d 397, 34 NY2d 1.) IV. The State Commission on Judicial Conduct erred in finding that Surrogate Feinberg committed misconduct on the ground that his conduct gave rise to an appearance of favoritism and friendship. (*Matter of Going,* 97 NY2d 121; *Matter of Romano,* 93 NY2d 161; *Matter of Duckman,* 92 NY2d 141; *Matter of Lonschein,* 50 NY2d 569.) V. The State Commission on Judicial Conduct erred in finding that Surrogate Feinberg awarded excessive fees. (*Matter of Gelfand,* 70 NY2d 211; *Matter of Shapiro v Board of Regents of Univ. of State of N.Y.,* 16 NY2d 783; *Matter of Benson v Board of Educ. of Washingtonville Cent. School Dist.,* 183 AD2d 996, 80 NY2d 756; *Matter of Brown v Saranac Lake Cent. School Dist.,* 273 AD2d 785; *Matter of Schiff,* 83 NY2d 689; *Matter of LaBelle,* 79 NY2d 350; *Brooklyn Pub. Lib. v City of New York,* 250 NY 495; *City of New York v New York City Ry. Co.,* 193 NY 543.) VI. If Surrogate Feinberg is found to have committed misconduct, he should be admonished or at most censured by this Court. (*Matter of Skinner,* 91 NY2d 142; *Matter of Quinn v State Commn. on Jud. Conduct,* 54 NY2d 386; *Matter of Cohen,* 74 NY2d 272; *Matter of Watson,* 100 NY2d

290; *Matter of LaBelle,* 79 NY2d 350; *Matter of Edwards,* 67 NY2d 153; *Matter of Kelso,* 61 NY2d 82; *Matter of Cunningham,* 57 NY2d 270; *Matter of Rogers v State Commn. on Jud. Conduct,* 51 NY2d 224; *Matter of Rater,* 69 NY2d 208.)

*Robert H. Tembeckjian,* New York City, and *Alan W. Friedberg* for respondent. I. Petitioner's persistent failure to abide by fundamental provisions of surrogate's law, to the detriment of the estates entrusted to his care, constitutes serious misconduct. (*Matter of Greenfeld,* 71 NY2d 389; *Matter of La Corte,* 7 AD3d 909; *Matter of Freeman,* 40 AD2d 397, 34 NY2d 1; *Matter of Potts,* 213 App Div 59, 241 NY 593; *Matter of Reeves,* 63 NY2d 105; *Matter of VonderHeide,* 72 NY2d 658; *Matter of Bauer,* 3 NY3d 158.) II. Petitioner's award of a flat 8% fee to Louis Rosenthal, and his approval of more than $9 million in fees to Rosenthal in 5¹/₂ years, were excessive. III. Petitioner's conduct is permeated with impropriety, the appearance of impropriety and the appearance of favoritism. IV. Petitioner's misconduct is aggravated by his incredible, evasive and uncandid testimony. (*Matter of Mason,* 100 NY2d 56; *Matter of Intemann,* 73 NY2d 580; *Matter of Kiley,* 74 NY2d 364; *Matter of Gelfand,* 70 NY2d 211.) V. Petitioner and amicus make other mistaken or unsubstantiated claims. VI. Petitioner's conduct was egregious and warrants his removal from judicial office. (*Matter of Petrie,* 54 NY2d 807; *Matter of Cooley,* 53 NY2d 64; *Bartlett v Flynn,* 50 AD2d 401; *Matter of Vincent,* 70 NY2d 208; *Matter of Rater,* 69 NY2d 208; *Matter of Cohen,* 74 NY2d 272; *Matter of Sims,* 61 NY2d 349; *Matter of Steinberg,* 51 NY2d 74.)

*Whiteman Osterman & Hanna LLP,* Albany (*Howard A. Levine* and *James B. Ayers* of counsel), for Surrogate's Association of the State of New York, amicus curiae. The errors of law, if any, committed by the Surrogate were not sufficient to constitute judicial misconduct. (*Matter of LaBelle,* 79 NY2d 350; *Matter of Greenfield,* 76 NY2d 293; *Matter of Duckman,* 92 NY2d 141; *Matter of Esworthy,* 77 NY2d 280; *Matter of Reeves,* 63 NY2d 105; *Matter of Tyler,* 75 NY2d 525; *Matter of Sardino v State Commn. on Jud. Conduct,* 58 NY2d 286; *Matter of McGee v State Commn. on Jud. Conduct,* 59 NY2d 870; *Matter of VonderHeide,* 72 NY2d 658; *Matter of Hamel,* 88 NY2d 317; *Matter of Conti,* 70 NY2d 416.)

## OPINION OF THE COURT

Per Curiam.

Michael H. Feinberg, Surrogate of Kings County, asks this

Court to reject the determination of the Commission on Judicial Conduct that he be removed from office on grounds of systematic failure, over a period of more than five years, to apply statutory requirements regarding the award of legal fees to counsel for the Public Administrator, and conduct that conveyed an appearance of impropriety. We accept the Commission's determined sanction.

## Background Law

Article VI, § 12 (d) of the New York State Constitution confers upon the elected surrogates of each county jurisdiction over all proceedings and actions "relating to the affairs of decedents, probate of wills [and] administration of estates." Most relevant here, the Surrogate's Court Procedure Act (SCPA)—in an article entitled "Public Administrators of the Counties Within the City of New York"—provides that each surrogate within the City's five counties can appoint a public administrator to administer the estates of citizens who die intestate without an heir willing and able to do so. The salary of the public administrator, paid by the City, is fixed at two thirds the amount paid to the New York City surrogates (SCPA 1105).

The statute also allows a New York City surrogate to appoint one or more counsels to the public administrator (SCPA 1108 [2] [a]).[1] While the public administrator is a salaried employee paid by the City, counsel is entitled to "reasonable compensation" paid out of the estate (SCPA 1108 [2] [b]). The Surrogate's Court Procedure Act offers no schedule or guideline as to what compensation is reasonable.

Over the years, excessive, undocumented fee awards to counsels for New York City public administrators have been the subject of investigation by the New York State Attorney General and the State Comptroller. Their 1992 joint report suggested that, having unsuccessfully "made repeated attempts to obtain voluntary compliance with our recommendation that legal fees should be charged based on actual services provided for each estate," counsel be required to submit affidavits of legal services performed in each estate to support fee requests (New

---

1. Outside New York City, public administrators can employ counsels of their choice (SCPA 1206). Public administrators' offices exist in New York City, Erie, Monroe, Nassau, Onondaga, Suffolk and Westchester counties. Elsewhere, the function of the public administrator is undertaken by the county's chief fiscal officer (SCPA 1001).

York State Attorney General and State Comptroller, Estate Assets Continue to be at Risk, at 32 [July 1992]; *see also* New York State Attorney General and State Comptroller, New York City Public Administrators: An Operational Review [Nov. 1987]). In addition, the Attorney General twice in the past attempted to rein in counsel fees approved by the Kings County Surrogate, reaching agreements in 1988 and 1994 with then-counsel to limit fee awards to six percent of an estate's value, with additional payment only in special cases.

Responding to the reports and recommendations, and concerned about "the imposition of questionable fees by the . . . [public administrators'] outside counsel," in 1993 the Legislature amended Surrogate's Court Procedure Act § 1108 (2) to require in each case documentation establishing that fees are commensurate with the legal services provided (Assembly Mem in Support, Bill Jacket, L 1993, ch 655). This requirement was, in part, designed to ensure that the beneficiaries—often helpless to challenge, or even to know about, excessive legal fees—were being charged appropriately for work actually done on the estates (*id.*).

The amendment—section 1108 (2) (c) of the Surrogate's Court Procedure Act—applies plainly and pointedly to counsel for the New York City public administrators. In its entirety, the paragraph reads:

> "Any legal fees allowed by the court pursuant to paragraph (b) of this subdivision shall be supported by an affidavit of legal services setting forth in detail the services rendered, the time spent, and the method or basis by which requested compensation was determined. In fixing the legal fees, the court shall consider the time and labor required, the difficulty of the questions involved, the skill required to handle the problems presented, the lawyer's experience, ability and reputation, the amount involved and benefit resulting to the estate from the services, the customary fee charged by the bar for similar services, the contingency or certainty of compensation, the results obtained, and the responsibility involved."

The statutory requirements of an affidavit and specification of factors the surrogate must consider when fixing the fee offer assurance that the amount paid out of an estate—and therefore not available as a distribution to beneficiaries—reflects the true and reasonable cost of the services rendered.

In addition, in 1993 the Legislature created an administrative board empowered to "establish guidelines and uniform fee schedules for the operation of the offices of public administrators" (SCPA 1128 [2]). While the board has no oversight responsibility with regard to the appointment of counsel or payment of fees for legal services, in October 2002 it recommended a uniform fee schedule for the counsels to the New York City public administrators—setting a sliding scale of maximum legal fees based on six percent of the estate's value for the first $750,000, with decreasing percentages charged for estates in inverse proportion to the estate's size beyond the initial $750,000 (Interim Report and Guidelines of the Administrative Board for the Offices of the Public Administrators [Oct. 2002]). The parties stipulated that, during the period at issue in this proceeding, the other five New York City surrogates calculated counsel fees—capped at six percent—based on a percentage of the total value of the estate. It was also stipulated that prior to approving a fee, in each case the other surrogates reviewed the required affidavits of legal services provided by counsel.

## Petitioner as Kings County Surrogate

Petitioner was elected Surrogate in 1996, not long after the 1992 joint report, the 1993 statutory amendment and the Attorney General's 1994 agreement with the Kings County Surrogate, all specifically aimed at ending abuses in documenting fees for counsel to the public administrator. Upon taking office in January 1997, petitioner formed a committee that conducted a public search for a new public administrator. Petitioner also replaced the firm that had for several decades served as counsel to the Public Administrator, but he did so without any search or interview process, appointing his long-time friend and law school classmate Louis Rosenthal to that lucrative position.[2] Rosenthal had helped to raise funds for petitioner's election campaign. His experience in Surrogate's Court practice was limited.

As the record reflects, in the years between January 1997 and mid-May 2002, when an estate came within his purview Rosenthal would generally conduct a review of its assets and liabilities, at which point he would file an initial accounting. Upon filing, the Surrogate's Court chief clerk would calculate

---

2. In years prior to Rosenthal's appointment, counsel to the Public Administrator was paid $1,126,250 (1994) and $1,482,860 (1995).

eight percent of the anticipated final value of the estate, and petitioner would approve 60% of that sum. After the accounting, the estate would settle its debts, conduct kinship hearings (if necessary) and make initial distributions to heirs. Counsel would then submit a final decree, which included a line for an additional fee request. That additional fee request was also generally calculated by the Surrogate's Court chief clerk, though on many occasions by Rosenthal himself, frequently worked out on a post-it note attached to the final decree. The additional fee was calculated to bring the total awarded to a percentage—generally eight percent—of the total value of the estate.[3]

From January 1997 until mid-May 2002, petitioner never required Rosenthal to submit an affidavit of legal services before approving a fee request, nor did he determine fees based on consideration of the statutory factors specified in SCPA 1108 (2) (c). While petitioner claimed to have coincidentally considered factors similar to those codified in section 1108, he repeatedly acknowledged during these proceedings that prior to May 2002 he was unaware of the statutory requirements. He testified that he only "skimmed through" the Surrogate's Court Procedure Act, never reading the entire Act—the statutory basis for his office and jurisdiction—claiming that it was "quite voluminous" and characterizing his failure to pay greater attention to the statute as an "oversight." Instead of following the statutory prescription, petitioner relied on the calculations of Rosenthal and the chief clerk as they appeared on the post-it notes. Petitioner did not individually review the estate files himself. In no instance did he reject or reduce a fee request submitted by counsel, and there is no evidence that he ever questioned a request or sought additional information before ruling on it.

As to the application of eight percent, petitioner maintained that he inherited from his predecessor, Surrogate Bernard Bloom, the practice of awarding fees representing a relatively high portion of the estate, because "that was the way it had been done in the Surrogate's Court for 30 plus years." However, he never discussed counsel fees with the surrogates of the other New York City counties, nor did he ask any other counsels how their fees were determined. Further, though the chief clerk

---

3. The parties submitted 475 estate files, of which petitioner himself selected 21 to serve as representative. Fifteen of those estates reflected legal fees of between 7.999% and 8%, five were between 7.8% and 7.97% and one was 8.27%. A few of those fees included payment to the firm that had completed work prior to Rosenthal's appointment.

knew of the 1988 and 1994 agreements with the Attorney General limiting fees, petitioner claimed he did not know the content of those agreements.

Between January 1997 and December 2002, petitioner awarded Rosenthal a total of $8,613,009.35 in legal fees. Of that amount, about $1,935,000 was net income to Rosenthal as counsel to the Public Administrator, apart from other estate-related fees (which totaled $458,824.66 between 1997 and 2002) and his law firm earnings.

In the spring of 2002, petitioner learned that the New York Daily News was about to run an exposé of the Kings County Surrogate, revealing petitioner's practice of approving counsel's fee requests without affidavits or individualized review of the cases. In anticipation of the story, petitioner asked Rosenthal to submit affidavits of legal services, retrospectively detailing the work done on each estate. After petitioner received these affidavits, however, not a single fee was adjusted.

### Proceedings Below

On March 18, 2003, the State Commission on Judicial Conduct filed a disciplinary complaint against petitioner alleging one charge of misconduct for continuing violations of three Rules of Judicial Conduct: 22 NYCRR 100.3 (B) (1) (a "judge shall be faithful to the law and maintain professional competence in it"); 100.2 (B) (to avoid the appearance of impropriety, a "judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment"); and 100.3 (C) (3) (a "judge shall not approve compensation of appointees beyond the fair value of services rendered"). The Commission appointed former Justice Felice K. Shea to hear evidence, report findings of fact and make conclusions of law.

Following a seven-day hearing, the Referee first determined that petitioner violated 22 NYCRR 100.3 (B) (1) by awarding legal fees without affidavits of legal services as required by SCPA 1108 (2) (c) and by failing to consider the enumerated statutory factors when fixing counsel fees. Second, she concluded that petitioner violated 22 NYCRR 100.3 (C) (3) by awarding a standard eight percent fee without consideration of the statutory factors when the customary fee in other New York City counties was six percent and when the agreement between prior counsel and the Attorney General set a general limitation on fees of six percent of the estate's value.

The Commission adopted the Referee's findings of fact and conclusions of law, adding the violation of 22 NYCRR 100.2 (B)

for conveying an appearance of impropriety and favoritism by awarding fees to his long-time friend without giving each case the statutorily required individualized consideration, failing to ensure that the fee requests were supported by affidavits of legal services and setting fees greater than those granted in the other New York City counties. The Commission determined that removal was the appropriate sanction.

Upon our plenary review of the record and consideration of the evidence and arguments, we agree with the Commission's conclusions that petitioner failed to maintain professional competence in the law and that his conduct conveyed the appearance of impropriety, and we conclude that petitioner's actions constitute misconduct warranting removal.

## Analysis

A judge must maintain professional competence in the law (22 NYCRR 100.3 [B] [1]). Petitioner's office and duties are governed by the Surrogate's Court Procedure Act and, whether voluminous or not, he was under an obligation to familiarize himself with the contents of that legislation, the primary authority for practice in the Surrogate's Court. Petitioner's repeated explanation that he "just read through sections" or "skimmed" the SCPA, and that his failure—over a period of more than five years—to know of and adhere to the single paragraph requirement of affidavits of legal services and individualized consideration of fee requests was an "oversight," demonstrate a shocking disregard for the very law that imbued him with judicial authority.

The purpose of the statutory affidavit and individualized consideration requirements is to ensure that beneficiaries of estates that, by definition, lack interested parties capable of offering independent review are paying only for the actual cost of administering the estates. While we recognize a benefit of a fee structure that protects smaller estates from being depleted by hourly legal fees, petitioner's pro forma practice of awarding eight percent of an estate's value, approved without attention to the actual work done and unsupported by affidavits of legal services, provides no assurance that the estates benefitted in proportion to the amounts they were charged and violates the clear legal requirement and legislative intent of SCPA 1108 (2) (c). Had petitioner additionally briefed himself on the agreements with the Attorney General's office, he would have been aware of the State's concerns about the flat eight percent

practice. Disregarding the content of those agreements only further suggests that he did not maintain competence in the responsibilities of his office.

Though petitioner insists that this failure was mere legal error and not misconduct, the two are not necessarily mutually exclusive (see Matter of Reeves, 63 NY2d 105, 109-110 [1984]). Indeed, a judge's systematic failure to conform to legal requirements may form the basis for removal (see Matter of Bauer, 3 NY3d 158 [2004]). Petitioner disregarded the clear statutory mandates of his office repeatedly over the course of more than five years and 475 proceedings, educating himself on the SCPA requirements only in response to a newspaper's investigatory series. Petitioner's consistent disregard for fundamental statutory requirements of office demonstrates an unacceptable incompetence in the law.[4]

Petitioner's argument that the language of SCPA 1108 (2) (c) stating that a surrogate "shall consider" the factors set forth therein cannot mean that a surrogate "must consider" those factors is unavailing. While the statute vests discretion in the surrogate to make legal fee determinations, the plain language of SCPA 1108 (2) (c) directs a surrogate to review the statutory factors prior to compensating counsel. "Shall" plainly did not mean "may." Considering the statutory factors does not divest the surrogate of discretionary authority to award fees, but it does satisfy the concern that fees are justified by the services rendered.

Petitioner's failure was made all the more egregious by his appointment, without considering other candidates, of a close personal friend and political supporter to whom he summarily awarded, between 1997 and 2002, more than $8.5 million, and who personally took home a substantial portion of that amount without the Surrogate's independent assurance in each case that the compensation was reasonable.

The Rules of Judicial Conduct require that a judge not "allow family, social, political or other relationships to influence the judge's judicial conduct or judgment" (22 NYCRR 100.2 [B]). A

---

4. Petitioner's failure to procure any affidavits of legal services was apparently unique to him—Surrogate Bloom required affidavits starting in 1993, as do the surrogates in the other four New York City counties. Of course, even the fact that petitioner inherited a lax culture from a predecessor would not excuse such misconduct. "Petitioner was responsible for his own conduct in the discharge of his judicial duties" (Matter of Greenfeld, 71 NY2d 389, 392 [1988]).

judge's conduct is under a sterner microscope than other members of the public, as "there is no higher order of fiduciary responsibility than that assumed by a Judge" (*Matter of Spector v State Commn. on Jud. Conduct*, 47 NY2d 462, 469 [1979]). While appointment of a friend does not itself convey an appearance of impropriety, when, as here, that appointment is coupled with the unsubstantiated award of several million dollars in fees from estates that, by definition, lack adversarial parties to challenge the practice, the taint of favoritism is strong. Here, the record reflects not mere lapses or errors in judgment but a wholesale failure of petitioner's duty, reflecting an indifference if not cynicism toward his judicial office. Petitioner's failure to abide by the legal requirements of his office, in a manner that conveyed the appearance of impropriety and favoritism, debased his office and eroded public confidence in the integrity of the judiciary. We conclude that the proper remedy for this misconduct is removal from office.

Accordingly, the determined sanction should be accepted, without costs, and Michael H. Feinberg removed from the office of Surrogate of Kings County.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur in per curiam opinion.

Determined sanction accepted, etc.