[No. A110631. First Dist., Div. Five. Mar. 6, 2006.]

Conservatorship of the Estate of KEVIN KANE.
BARBARA SIMON, as Conservator, etc., Petitioner and Appellant.

COUNSEL

Kato, Feder & Suzuki and Bruce A. Feder for Petitioner and Appellant.

OPINION

**JONES, P. J.**—Barbara Simon, the court-appointed conservator of Kevin Kane, appeals the probate court's denial of a petition for a substituted judgment to establish a special needs trust under the authority of Probate Code section 2580. We reverse the probate court's order denying the petition, and remand for further proceedings.

## I. *FACTS AND PROCEDURAL HISTORY*

Kevin Kane (Kane) is a developmentally disabled adult who lived with his mother until her death in March 1999. Upon his mother's death, Kane became entitled to an inheritance of approximately $65,000. Kane is unable to live safely and independently, or to manage his prospective inheritance. Accordingly, the court established a limited conservatorship of Kane's estate and appointed Barbara Simon as conservator on December 8, 2003. Kane resides in a group living facility, which is suitable for his special needs, and attends a day program in another city nearby. Kane receives Supplemental Security Income (SSI) and Medi-Cal benefits, which pay for much of his care and medical treatment.

The estate planning previously undertaken for Kane's mother did not, unfortunately, include any special provisions for Kane, such as the establishment of a special needs trust for him. In particular, such a special needs trust

is desirable for Kane, because if he were to receive his inheritance directly, he would be ineligible for SSI and Medi-Cal benefits, and would likely deplete the inheritance relatively quickly to pay for ordinary living expenses and medical care. However, if the legacy was placed in a special needs trust, he could use the trust proceeds for his special needs, such as various types of therapy, while he is still receiving public benefits.

The conservator set forth these circumstances in her petition, seeking court authority to create such a trust for Kane pursuant to Probate Code section 2580 et seq.[1] An investigator employed by the court in conservatorship matters conducted an investigation, including an interview with Kane. The investigator recommended that the petition be granted, because it was in the best interests of Kane, the conservatee.

The court expressed some sympathy for the petition, but questioned whether it had statutory authority to order the creation of such a special needs trust in these circumstances, under the substituted judgment procedure set forth in section 2580. The lower court reasoned that under the substituted judgment procedure, the court would essentially be only a substitute for Kane himself, and the court questioned whether Kane could have been the grantor of such a trust. Lacking relevant authority for the creation of such a special needs trust for Kane in these circumstances, the court denied the petition.

## II. *DISCUSSION*

### A. *The Substituted Judgment Procedure*

The major legal issue presented here is whether the probate court had legal authority to create such a special needs trust for Kane through the vehicle of a substituted judgment, so that the trial court could authorize Kane's conservator to transfer his prospective inheritance to the special needs trust. We therefore first examine the authority and jurisdiction of the probate court to exercise its judgment, in other contexts, as a substitute for the judgment of a conservatee.

The Legislature has generally authorized a probate court to substitute its judgment for that of a conservatee. (§ 2580 et seq.) As the court explained in *Conservatorship of Hart* (1991) 228 Cal.App.3d 1244 [279 Cal.Rptr. 249] (*Hart*): "The doctrine underlying the substituted-judgment statute was first recognized in California in *Estate of Christiansen* (1967) 248 Cal.App.2d 398 [56 Cal.Rptr. 505] [(*Christiansen*)] . . . . *Christiansen* declared 'that the courts of this state, in probate proceedings for the administration of the estates of

---

[1] Unless otherwise indicated, all further section references are to the Probate Code.

insane or incompetent persons, have power and authority to determine whether to authorize transfers of the property of the incompetent for the purpose of avoiding unnecessary estate or inheritance taxes or expenses of administration, and to authorize such action where it appears from all the circumstances that the ward, if sane, as a reasonably prudent man, would so plan his estate, there being no substantial evidence of a contrary intent.' (248 Cal.App.2d at p. 424.) Significantly, *Christiansen* did not require that a court find the ward would have acted as proposed; instead it adopted an essentially objective prudent-person standard: Thus *Christiansen* contemplated substitution of the court's judgment for that of the incompetent person." (*Hart, supra*, at pp. 1251–1252, italics omitted.)

Further, in *Christiansen* as in the present case, the authority of the probate court was being invoked in order to conform the conservatee's estate to federal and state law provisions designed to minimize the extent to which those assets would be acquired by the federal and state government, a goal that was deemed legitimate and in the interests of the conservatee.

■ In accordance with the relevant case law, section 2580 now generally provides that the court may make an order for the purpose of (1) benefiting the conservatee or the estate; (2) minimizing current or prospective taxes; or (3) providing gifts to persons or charities which would be likely beneficiaries of gifts from the conservatee. (See *Conservatorship of McElroy* (2002) 104 Cal.App.4th 536, 552 [128 Cal.Rptr.2d 485] .)

■ Other sections of the Probate Code set forth a procedure and standards for deciding such petitions. Section 2582 provides that the court may make an order for substituted judgment only if it determines that the conservatee either is not opposed to the order or, if opposed, lacks legal capacity. Section 2582 also provides that the court must determine either that the action will have no adverse effect upon the estate, or that the remaining estate will be adequate for the needs of the conservatee. Section 2583 provides that, in deciding a motion for substituted judgment, the court should consider all other relevant circumstances, including but not limited to various enumerated circumstances. One such consideration is "[t]he minimization of current or prospective income, estate, inheritance, or other taxes . . . ." (§ 2583, subd. (i).) Finally, section 2584 states: "After hearing, the court, in its discretion, may approve, modify and approve, or disapprove the proposed action and may authorize or direct the conservator to transfer or dispose of assets or take other action as provided in the court's order."

B. *The Showing of The Desirability of a Special Needs Trust for Kane*

We next recount the reasons the conservator sought to establish a special needs trust for Kane. As set forth in the petition, such a special needs trust is a method of holding and protecting the assets of a person with special needs, so that those assets are available to meet those special needs. In particular, such a special needs trust is desirable for Kane, because he is presently receiving federal social security benefits, and state Medi-Cal benefits. As we have stated, if he were to receive the inherited legacy from his mother outright, he could no longer receive such benefits. However, if the legacy was placed in a special needs trust, he could use the trust proceeds for his specialized care, while he is still receiving public benefits.

C. *The Probate Court Had Jurisdiction and Authority to Establish a Special Needs Trust for Kane.*

For the reasons that follow, we conclude the probate court had jurisdiction to establish a special needs trust for Kane in these circumstances. We first address the applicable standard of review, and then proceed to the analysis of relevant statutory authority and case law.

1. *Standard of Review*

This appeal presents pure issues of law concerning the jurisdiction and authority of the probate courts, as to which we must exercise de novo review. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–801 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

2. *Statutory Authority*

Both federal and California statutes are relevant on the subject of the creation of a special needs trust.

Pursuant to relevant provisions of federal law, particularly provisions of the Omnibus Budget Reconciliation Act of 1993 (OBRA) now generally codified at title 42 United States Code section 1396d, such a special needs trust may be created for a person such as Kane. In particular, title 42 United States Code section 1396p(d)(4)(A), provides a definition of such a special needs trust, as follows: "A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent,

grandparent, legal guardian of the individual, *or a court . . . ."*[2] (Italics added.) Assets held in such a trust must be used for the special medical and therapeutic needs of the beneficiary, but these assets will be excluded when considering whether a person qualifies for public benefits such as Medi-Cal coverage.

■ California law also authorizes the establishment of special needs trusts to preserve the availability of public benefits to the conservatee, under the same circumstance. The California Code of Regulations, title 22, section 50489.9, subdivision (a)(3)(B) and (4), contains state law provisions parallel to federal law, allowing the use of a special needs trust to hold certain assets, without losing eligibility for public benefits such as Medi-Cal.

The issue confronting the trial court here was whether the substituted judgment doctrine, codified in section 2580, is available to establish the special needs trust in the circumstance presented by Kane's conservator: a disabled beneficiary, who has no living parents or grandparents, but who faces substantial living and medical care expenses over a relatively long life expectancy.

■ Section 2580, subdivision (b), provides authority for any order that "may include, but is not limited to" a variety of enumerated actions. Among the enumerated actions, subdivision (b)(5), provides for an order for the creation of trusts, including certain types of special needs trusts for the benefit of persons with special medical or health needs: "Creating for the benefit of the conservatee or others, revocable or irrevocable trusts of the property of the estate, which trusts may extend beyond the conservatee's disability or life. A special needs trust for money paid pursuant to a compromise or judgment for a conservatee may be established only under chapter 4 (commencing with Section 3600) of Part 8, and not under this article." The cross-reference in section 2580, subdivision (b)(5), to chapter 4, for the creation of litigation special needs trusts (LSNT's) as a result of a compromise or judgment in litigation, is inapposite here, because the trust to be established for Kane is not being funded by a compromise or judgment in litigation. (See *Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 887–888 [67 Cal.Rptr.2d 407] (*Hamilton*).) As section 3600 is unavailable to Kane, the statutory authority to create such a special needs trust in the present circumstances is solely conferred by section 2580, subdivision (b)(5).

---

[2] Title 42 United States Code section 1396p(d)(4)(A), provides in its entirety: "A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, *or a court* if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter." (Italics added.)

■ In our view, it is inconsistent with federal legislation to allow a special needs trust for litigation beneficiaries, but not for beneficiaries of an inheritance in these circumstances. The relevant federal and state statutes provide that upon the creation of such a special needs trust by a court, a conservatee in Kane's circumstance may continue to receive public benefits, and may use the proceeds of the special needs trust for his unique medical and therapeutic needs. A proper purpose for application of the substituted judgment doctrine is the avoidance of taxes or other governmental assessments. (*Christiansen, supra*, 248 Cal.App.2d at p. 424.) We conclude the provisions of section 2580 are available to establish such a trust for his benefit.

### 3. *Case Law Authority*

Our conclusion is supported by out-of-state case law concerning the use of the special needs trust in similar circumstance, and procedures for establishing such a trust.

Appellant relies on authority such as *Matter of Watkins* (1997) 24 Kan.App.2d 469 [947 P.2d 45, 46–48] (*Watkins*). *Watkins* concluded that under federal law as stated in OBRA, special needs trusts were a recognized method of holding assets to benefit a conservatee, and that the state (in that case, Kansas) must also legally recognize such special needs trusts, and abide by the rules for their creation. In *Watkins*, the Kansas Court of Appeals relied in part on New York authority, *Matter of Moretti* (1993) 159 Misc.2d 654 [606 N.Y.S.2d 543, 544–548], which also held that federal law recognizes the validity of such special needs trusts, and state law must be conformed to the relevant federal law allowing their creation and use.

Perhaps the most relevant authority here is a recent New York trial court case, *In re Gillette* (2003) 195 Misc.2d 89 [756 N.Y.S.2d 835, 838] (*Gillette*).[3] In *Gillette*, a disabled individual filed a petition to allow the court to establish for him a special needs trust, also called a supplemental needs trust or SNT. As in the present case, the petitioner was receiving social security benefits, and he sought to use a special needs trust to hold his assets, so as to allow those assets to be used for his special needs, while still receiving social security benefits. As in the present case, the petitioner had no surviving parents or grandparents who could establish such a trust for him, and therefore he asked the court to order the creation of such a trust for him. (*Ibid.*)

The trial court granted the petition, even though the disabled person was essentially the grantor of his own trust. The court also observed that the trust

---

[3] The surrogate's court is the New York trial court handling probate matters. (See *In re Feinberg* (2005) 5 N.Y.3d 206 [833 N.E.2d 1213, 800 N.Y.S.2d 529, 530].)

had not yet been created, so it did not require the use of any nunc pro tunc procedure to amend any existing trust. In the words of the court: "As set forth above, the law requires that an SNT for a disabled person under 65 be established by 'a parent, grandparent, legal guardian or court.' However, there is no logical reason that the disabled person cannot be the grantor and petition the court to establish the trust, as long as the trust has not been signed by the trustee and funded before submission to the court. If all the requirements to create a trust have not been completed, the trust is not established. Even though the grantor is the disabled person, the court can entertain the petition and establish the trust by court order, so long as the creation of the trust has not been completed before the petition is submitted to the court." (*Gillette, supra,* 756 N.Y.S.2d at p. 838.)[4] Thus, authority from other states also supports the appellant's argument that the lower court had legal authority to create a special needs trust for Kane in these circumstances.

4.  *Is the Creation of a Special Needs Trust for Kane Advisable Under the Circumstances of this Case?*

■   In light of the relevant statutes and other authorities discussed above, we conclude that the probate court had jurisdiction and authority to order the creation of a special needs trust for Kane, in these circumstances. In particular, the court may order the creation of such a trust, even though Kane does not have any surviving parents or grandparents. (*Gillette, supra,* 756 N.Y.S.2d at p. 838.) Of course, it is for the probate court, in the first instance, to exercise its discretion as to whether such a trust should be created, based upon the facts placed in the record. We simply hold here that the probate court had jurisdiction and authority to order the establishment of such a special needs trust, and the lower court should reconsider the matter, in light of this legal conclusion.

---

[4] We also observe that the ruling in *Gillette,* regarding the need to avoid the use of a nunc pro tunc procedure in connection with such a special needs trust, is consistent with authority from our own appellate district, in the case of *Hamilton, supra,* 57 Cal.App.4th at pages 890–891, which concerned an LSNT. Appellant in the present case did not seek to use a nunc pro tunc procedure to amend an existing trust, and instead petitioned the court to establish a new special needs trust for Kane. Further, as previously noted, Kane's trust is not governed by the LSNT rules for trusts funded by the proceeds of litigation.

## III.  *DISPOSITION*

The order appealed from is reversed, and the matter is remanded to the trial court with instructions to reconsider the petition in light of the views expressed in this opinion.

Simons, J., and Gemello, J., concurred.