Filed 8/8/14  Conservatorship of Mayo CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Conservatorship of the Person and Estate of LESLIE A. MAYO. | D064177 |
| DONALD PRESTON MURRAY, AS CONSERVATOR, ETC., | |
| Petitioner and Respondent, | (Super. Ct. No. 37-2008-00152495-PR-CP-CTL ) |
| v. | |
| RONALD A. MAYO, | |
| Objector and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Reversed and remanded.

Stephen M. Hogan for Objector and Appellant.

Henderson, Caverly, Pum & Charney, Kristen E. Caverly, Robert C. Mardian III and Lisa B. Roper for Petitioner and Respondent.

Ronald A. Mayo (Ronald) appeals two ex parte orders entered by the superior

court in a probate matter.  The first terminated conservatee Leslie A. Mayo's (Leslie)

interest in the Mayo Family Trust, settled on April 22, 1992, as amended and restated on December 17, 2003 (Trust) and transferred certain real property formerly held in the Trust by Ronald and Leslie, husband and wife, as trustees, to Ronald ,as trustee, and Leslie, as an individual, as tenants in common. The second allowed Leslie's coconservator, Donald Preston Murray (Murray), to proceed with a petition to partition the subject real property. Among other arguments, Ronald contends the court abused its discretion by making the subject orders on an ex parte basis and without being completely informed of the relevant facts as required under *In re Conservatorship of Hart* (1991) 228 Cal.App.3d 1244 (*Hart*). We agree, and thus, reverse the orders and remand the matter back to the superior court for further proceedings consistent with this opinion.

PROCEDURAL AND FACTUAL BACKGROUND

Ronald and Leslie have been married for over 40 years. Ronald, age 85, resides at 8131 Paseo del Ocaso, La Jolla, California 92037 (House). Leslie, age 78, suffers from advanced dementia. On December 30, 2008, Leslie's two adult children from her prior marriage, Lee Roy (Roy) and Murray, were appointed coconservators of the person and estate of Leslie.

From 1986 until June 2011, Ronald and Leslie lived together in the House. However, on June 29, 2011, Roy and Murray removed Leslie from the House and placed her in a memory care facility. Leslie's care is expensive, and she does not have sufficient funds to pay for it. Murray claims that, on average, after considering tax obligations and incidental expenses, Leslie's monthly deficit is $1,500.

2

Ronald and Leslie had purchased the House as community property and later placed it in the Trust as community property. In addition to the House, the Trust holds the House's furnishings as assets. The Trust created a life estate to the surviving spouse in the House. The Trust permits personal revocation or revocation by a conservator with court approval.

On April 11, 2013, Murray, as coconservator, filed a petition to: (1) revoke the Trust; and (2) partition and sell Leslie's real property (including the House). Murray also alleged a breach of the Trust. In the petition, Murray stated that "[t]he purpose of this petition is to allow Leslie to access her own assets to pay for her care above what the court orders Ronald Mayo to pay . . . ."

Murray also filed an ex parte application seeking to revoke the Trust and for leave to petition for partition of the House. In the ex parte coversheet, Murray defines the reason he is seeking an immediate ex parte order is that the "conservatee has insufficient funds to maintain her expenses." In his application, Murray reiterates that Leslie has "insufficient cash to meet her monthly living and healthcare expenses, and her husband, Ronald Mayo, refuses to provide the $1,500 per month in supplemental support that Leslie needs." Thus, Murray requested that the court order Leslie's interest in the Trust revoked and allow him to petition to partition the House.

In support of the ex parte application, Murray submitted a declaration from his attorney detailing the notice she provided to Ronald. He also included portions of the second amendment to the Trust. Murray did not include any evidence as to Leslie's monthly income, monthly expenses, savings, or other funds at her disposal.

3

Perhaps Murray did not deem such evidence necessary because the hearing on the ex parte application was held on the same day as the trial on Murray's petition for support of Leslie. However, the support petition and any evidence filed in support of it are not in the record before us. In addition, at the request of the parties, the court continued the trial on the support petition from April 22 to October 25, 2013. As part of the court's order continuing the trial, it ordered Ronald to pay $1,300 per month toward Leslie's care until the date of the continued trial.

In addressing the ex parte application, the court noted that Ronald's agreement to pay $1,300 a month toward Leslie's care "make[s] up [Leslie's monthly] deficit so that her care is left." Murray's attorney agreed. The court then made clear what the parties were "fighting over" is a "very large attorney fees order." Murray's counsel stated that if the parties could resolve the support issue at the ex parte hearing then Murray's attorneys would agree to wait to be paid. The parties, however, were not able to resolve the support issue because Ronald stated the amount of Leslie's monthly deficit had never been proved.

After additional discussion, the court presented a choice to Ronald. He could agree to pay $1,300 in support of Leslie for the rest of her life, subject to modification in the future if the expenses increased or decreased. If he did not agree to do so, the court would issue the order revoking Leslie's interest in the Trust and allow Murray to proceed with his petition to partition the House. Ronald repeated that he disputed the amount of Leslie's monthly deficit so he would not agree to a permanent support plan. As such, the court granted the application and ordered the requested relief.

4

Ronald timely appealed.

DISCUSSION

Ronald raises three issues on appeal. First, he contends the court erred in granting Murray's requested relief on an ex parte basis and without being fully informed of all relevant circumstances. Second, Ronald argues the court erred in transferring the House from Ronald and Leslie, as husband and wife, as trustees, to Ronald, as trustee and Leslie, as an individual, as tenants in common. Third, Ronald maintains the court erred in granting Murray's application for an order under Probate Code[1] section 2463 permitting him to petition to partition the House. Because we agree with Ronald on the first issue, we do not reach the remaining two issues.

As a threshold matter, Murray contends Ronald does not have standing to maintain this appeal because, after the court entered the subject orders, Ronald filed a petition for dissolution of his marriage with Leslie.[2] However, Murray provides no authority to support this proposition. He does cite to two Family Code sections (§ 771, subd. (a) and § 2040, subd. (a)), but neither section states that an individual loses his appellate rights after he files for dissolution of his marriage. (See Fam. Code, § 771, subd. (a) [property acquired by either spouse during marriage, but after separation, is ordinarily the acquiring spouse's separate property]; Fam. Code, § 2040, subd. (a) [dissolution summons must contain a temporary restraining order restraining both parties from removing minor

---

1    Statutory references are to the Probate Code unless otherwise specified.

2    We grant Murray's motion for judicial notice of Ronald's petition for dissolution of marriage. (See Evid. Code, § 452, subd. (d).)

5

children from California, transferring property, changing life insurance coverage, and creating or modifying a nonprobate transfer in a way that affects disposition of the property].)

Murray's standing argument appears to be created out of whole cloth without any authority whatsoever. He simply dictates: "Ronald's filing for divorce should divest his standing as a spouse to assert any objection to the revocation of Leslie's interest in the Trust and her effort to force a sale of the House." He fails to cogently explain why this is so. To the extent he is arguing that Ronald only has standing because he is Leslie's spouse, he ignores the fact that, even after filing of the petition to dissolve his marriage, Ronald remains Leslie's spouse. (See Fam. Code, § 310 [a marriage can be dissolved only by the death of one of the parties, a judgment of dissolution of marriage, or a judgment of nullity of marriage].) As such, we determine Ronald has standing to pursue the instant appeal.

Having concluded Ronald has standing to proceed with this appeal, we turn now to his first argument that the court erred in granting Murray's requested relief on an ex parte basis and without being fully informed of all relevant circumstances. Murray contends the court was authorized to grant the subject orders under section 2580 et seq., the substituted judgment statutes. Under section 2580 et seq., the Legislature has authorized a trial court to substitute its judgment for that of a conservatee. (*Hart*, *supra*, 228 Cal.App.3d at pp. 1251-1252; *In re Conservatorship of Kane* (2006) 137 Cal.App.4th 400, 403 (*Kane*).) "The doctrine underlying the substituted-judgment statute was first recognized in California in *Estate of Christiansen* (1967) 248 Cal.App.2d 398.

6

*Christiansen* declared 'that the courts of this state, in probate proceedings for the administration of the estates of insane or incompetent persons, have power and authority to determine whether to authorize transfers of the property of the incompetent for the purpose of avoiding unnecessary estate or inheritance taxes or expenses of administration, and to authorize such action where it appears from all the circumstances that the ward, if sane, as a reasonably prudent man, would so plan his estate, there being no substantial evidence of a contrary intent.' [Citation.] Significantly, *Christiansen* did not require that a court find the ward *would have* acted as proposed; instead it adopted an essentially objective prudent-person standard. Thus *Christiansen* contemplated *substitution* of the court's judgment for that of the incompetent person." (*Hart*, *supra*, at pp. 1251-1252; original italics.)

Section 2580, subdivision (a) provides that the court may grant a petition for an order authorizing or requiring the conservator to take action for the purpose of "(1) benefiting the conservatee or the estate; (2) minimizing current or prospective taxes; or (3) providing gifts to persons or charities which would be likely beneficiaries of gifts from the conservatee." (*Kane*, *supra*, 137 Cal.App.4th at p. 404.)

Section 2582 provides that the court may make an order for substituted judgment only if it determines that the conservatee either is not opposed to the order or, if opposed, lacks legal capacity for the proposed action. It also provides that the court must determine either that the action will have no adverse effect upon the estate or that the remaining estate will be adequate for the needs of the conservatee.

7

Section 2583 provides that, in deciding a motion for substituted judgment, the court must consider all the relevant circumstances, including 13 circumstances listed in the section.

Section 2584 provides: "After hearing, the court, in its discretion, may approve, modify and approve, or disapprove the proposed action and may authorize or direct the conservator to transfer or dispose of assets or take other action as provided in the court's order."

We review the superior court's order approving, disapproving, or approving with modification a petition for substituted judgment for abuse of discretion. (*Hart*, *supra*, 228 Cal.App.3d at p. 1253.) *Hart* makes clear that to substitute its judgment for that of the conservatee, the trial court must have "complete information as to all relevant circumstances." (*Id*. at p. 1254.) The burden is on the conservator or other petitioner to inform the court fully of those circumstances. "And in any case the superior court must on its own motion take all steps necessary to satisfy itself, as the conservatee's decisionmaking surrogate, that it has been fully and fairly informed." (*Ibid*.) Thus, the trial court must "receive and consider relevant and otherwise admissible evidence." (*Id*. at p. 1264.) A substituted judgment petition should be granted only if the trial court is satisfied, "by a competent showing of all relevant circumstances, that in the last analysis the proposed action is what a reasonably prudent person in the conservatee's position would have done." (*Ibid*.)

Relying primarily on *Hart*, *supra*, 228 Cal.App.3d 1244, Ronald contends the court was not fully and fairly informed. Specifically, he asserts the court had no basis to

8

grant the relief on an ex parte basis because there was no urgency requiring the court to act on an ex parte basis. Moreover, because the court granted the orders on an ex parte basis, it did not have complete information as to all relevant circumstances. We agree.

Ex parte applications for relief are permitted only in limited circumstances. (6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 58, p. 483.) One such circumstance is "[w]here there is pressing necessity for immediate relief . . . ." (*Id.* at p. 484.) Among other requirements (see California Rule of Court, rule 3.1200 et seq.[3]), an ex parte applicant "must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." (Rule 3.1202(c).) An ex parte application that fails to comply with these rules is properly denied. (*Datig v. Dove Books, Inc.* (1999) 73 Cal.App.4th 964, 977.)

Here, in his ex parte application, Murray described the "urgency for seeking an immediate ex parte order" as Leslie having "insufficient funds to maintain her expenses." However, during the ex parte hearing, Ronald agreed to pay $1,300 per month toward Leslie's care until the support petition trial on October 25, 2013, and the court ordered him to do so. After Ronald agreed to such payment, the court noted that Ronald was, "at least for now, agreeing to make up [Leslie's] deficit [for her care]." And Murray's attorney agreed. With the immediate urgency addressed, there ceased to be any articulated need to proceed on an ex parte basis.

---

[3] All references to rules are to the California Rules of Court.

9

Nevertheless, the court moved forward and addressed the issues raised in the ex parte application. Ronald contends that in doing so, the court was not fully and fairly informed. (See *Hart*, *supra*, 228 Cal.App.3d at p. 1254.) He points out that the court did not have before it Leslie's will or separate intervivos trust. Ronald maintains that Murray is a beneficiary under Leslie's will and he failed to disclose this fact as well as the benefits he would receive in his role as a beneficiary by eliminating Ronald's life estate in the House. We find no indication in the record that these estate documents were before the court during the ex parte hearing or that Murray disclosed his status as a beneficiary under Leslie's will. Section 2583, subdivisions (e) ["wishes of the conservatee"], (f) ["any known estate plan"], and (g) ["the manner in which the estate would devolve upon the conservatee's death"] indicate that the court's consideration of these issues is of the moment in substituting its judgment for the conservatee's. As such, it does not appear that the court had "complete information as to all relevant circumstances." (See *Hart*, *supra*, 228 Cal.App.3d at p. 1254.)

In addition, Ronald notes the Trust, in its entirety, was not before the court, and thus, the court did not and could not consider certain relevant portions of the Trust before issuing the ex parte orders. For example, the Trust provides a life estate in the House for the surviving spouse. It also states "[a]ll property delivered to both spouses shall continue to be the Trustors' community property and shall be held and administered as community property." Ronald argues these provisions prevent the court from changing the manner in which the House was held. Although we do not weigh in on this issue, we observe there is no indication in the record that the court considered these provisions of

10

the Trust in making the ex parte orders. In determining to dissolve a trust as to a conservatee, we deem it critical for the court to consider the entire trust document. Here, there is no indication that the court did so. Therefore, the court was not "fully and fairly informed." (See *Hart*, *supra*, 228 Cal.App.3d at p. 1254.)

Surprisingly, Murray, in his respondent's brief, does not respond to any of Ronald's arguments about the lack of urgency supporting ex parte relief. Nor does Murray explain how the court had all relevant information before it prior to making the ex parte orders. He simply ignores these arguments. We also find it telling that Ronald relied heavily on *Hart*, *supra*, 228 Cal.App.3d 1244, citing it throughout the opening brief, but Murray does not even mention it in his respondent's brief. At best, we view Murray's silence as a poor tactical decision. However, considering that Ronald's arguments are well taken and Murray utterly failed to even acknowledge the issues, a more reasonable interpretation is that Murray conceded the validity of Ronald's contentions.

In any event, this case underscores the dangers of proceeding on an ex parte basis, especially when the court will be substituting its judgment for the conservatee's under section 2580 et seq. Here, the court did not have complete information of the relevant circumstances. It was not fully and fairly informed by Murray. (See *Hart*, *supra*, 228 Cal.App.3d at p. 1254.) Instead of considering the entire Trust document, Leslie's will, Leslie's separate trust, and Murray's status as a beneficiary under Leslie's estate documents, the court reduced the ex parte hearing into a choice for Ronald. He could agree to a permanent support plan of $1,300 a month or the court would remove Leslie's

11

interests from the Trust and allow Murray to proceed with a petition to partition the House. The court gave Ronald this Hobson's choice despite Ronald's arguments that he needed a lawyer and his disagreement regarding the amount of support needed. This is all the more surprising because of the court's comments regarding the uncertainty of Leslie's monthly deficit:

> "This is a fairly straightforward situation of just making sure that your wife has her care needs met. You disagree with the calculation of what that deficit is. It seems pretty straightforward to me, but I haven't heard the trial; so I don't know what the numbers are, but I know, at least in the short term, you have agreed to make the payments we have discussed of -- what was it? -- $1300 a month. But until we have the trial, I am not going to know what those numbers are."

Under these circumstances, it is clear the court abused its discretion in entering the ex parte order terminating Leslie's interest in the Trust and transferring the House to Ronald, as trustee, and Leslie, as an individual, as tenants in common. Also, because the additional ex parte order allowing Murray to proceed with his petition to partition the House was based on the order terminating Leslie's interest in the Trust, we determine that order is improper as well. Accordingly, we reverse both ex parte orders and remand the matter back to the superior court for further proceedings consistent with this opinion. We express no opinion regarding whether the court can terminate Leslie's interest in the Trust after a properly noticed hearing, especially in light of Ronald's petition to dissolve the marriage.

12

DISPOSITION

The orders are reversed and the matter is remanded for further proceedings

consistent with this opinion. Ronald is entitled to his costs of this appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.

McINTYRE, J.