Filed 7/6/15  Conservatorship of Resnick CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Conservatorship of the Estate of ELIZABETH RESNICK. | |
| BARBARA R. SIMON, <br><br> Petitioner and Appellant, <br><br> v. <br><br> ELIZABETH RESNICK, <br><br> Defendant and Respondent. | A140915 <br><br> (Alameda County <br> Super. Ct. No. RP05230890) |

**INTRODUCTION**

Barbara R. Simon, formerly the conservator of the estate of Elizabeth Resnick, appeals from an order of the probate court order denying Simon conservator fees for the final work she did following Resnick's death.  The court denied fees based on what it perceived were inadequate efforts by Simon to check on Resnick's personal well-being the weeks immediately prior to her death.  We reverse.

The probate court effectively penalized Simon for conduct it had expressly approved in connection with the accounting period ending on the date of Resnick's death, which we will refer to as the "pre-death accounting period."  That prior order, approving Simon's work as conservator, was final months before the court did an about-face and ruled that same conduct was egregiously deficient.  Not only did the probate court lack the power to effectively vacate its prior order and revisit the adequacy of Simon's actions

1

during the pre-death accounting period, but Simon's actions during that prior period had no relevance to the appropriateness of her actions and her entitlement to conservator fees during the subsequent accounting period following Resnick's death, which we will refer to as the "post-death accounting period."

**BACKGROUND**

In 2005, Resnick inherited approximately $1 million in retirement accounts from her father. She suffered from depression and petitioned for conservatorship of her estate, seeking help in settling her deceased father's estate. In October 2005, Simon, a professional fiduciary with over 20 years of experience, was appointed conservator of Resnick's estate.

Five years later, in November 2010, Resnick petitioned to terminate the conservatorship, and a hearing was set for March 3, 2011. On March 2, Resnick was found dead in her apartment.

Simon and Resnick had last communicated on February 10. Thereafter, between February 16 and March 2, Simon made several attempts to contact Resnick, including two unsuccessful home visits on February 16 and several unanswered calls on February 28. Simon then contacted Resnick's sister and Resnick's attorney. When she learned neither had heard from Resnick, Simon called the police, who found Resnick's body in her apartment. The coroner listed Resnick's cause of death as Acute Polypharmacy Toxicities. While the death certificate lists Resnick's date of death as March 2, the coroner concluded it was likely she died at least two weeks earlier.

*Pre-Death Accounting Period (Petition to Settle Third and Final Account)*

Approximately three months after Resnick's death, Simon filed a "Petition for Termination of Conservatorship; To Settle Third and Final Account and Report of Conservator; for Conservator's Fees; for Attorney's Fees and Costs Advanced; and for Discharge of Surety." She advised the probate court the accounting covered the period from October 1, 2008 to September 30, 2010, and she anticipated filing an amended accounting which would include the entire period from September 30, 2010 to Resnick's death on March 2, 2011. Four months later, Simon filed an amended petition covering

2

both periods of time (the pre-death accounting period). In connection with the amended petition, Simon submitted her time logs which chronicled her final efforts to contact Resnick.

The amended petition to approve the Third and Final Accounting came on for hearing on January 5, 2012, and the probate court filed its written order approving the accounting the same day. The court expressed no concerns about Simon's conduct or the circumstances surrounding Resnick's death and expressly approved "the acts by the Conservator, as more particularly set forth in the account and report." The only item as to which the court made any adjustment was the hourly rate Simon claimed for conservator fees. The court concluded the standard rate was appropriate, rather than the greater rate Simon had sought on the ground Resnick was difficult to deal with and managing her estate was significantly more complicated than the typical conservatorship estate. Accordingly, the court approved conservator fees of $28,386.60 for Simon's work from October 1, 2008 through Resnick's death on March 2, 2011. The court further instructed Simon to file a supplemental accounting for the period following Resnick's death.

Notice of entry of the court's order was served on Resnick's sister, and her lawyer, as well as Simon, and filed with the court on February 3, 2012. No appeal was taken.

***Post-Death Accounting Period (Supplemental Account and Report)***

Approximately a year and a half later, in June 2013, Simon filed a "Supplemental Account and Report of Conservator to Amended Third and Final Account and Report of Conservator, and Petition for Settlement; For Fees to Conservator and Attorney, for Reimbursement of Costs Advanced; for Termination of Conservatorship, and Discharge of Conservator and Bond Upon Filing of Receipts." She sought $4,425 in conservator fees for the time period covered, March 3, 2011 to March 31, 2013, and $1,250 in fees for services to be performed in closing the conservatorship. Simon filed a declaration describing the tasks and events that had occurred during the post-death accounting period and the complexities involved in closing Resnick's sizeable estate. These included monitoring the progress and resolution of litigation in both the Alameda and San

3

Francisco Superior Courts over who were the proper beneficiaries and interfacing with the financial institutions holding Resnick's assets.

Prior to the originally scheduled hearing date (August 16, 2013) on the supplemental accounting, an examiner for the probate court raised questions about Simon's fee request. Simon accordingly filed an additional declaration further explaining her work during the period following Resnick's death, and the hearing was continued.

Prior to the continued hearing date (October 3, 2013), an examiner again raised questions about Simon's fee request. Simon filed another declaration further discussing her work during the post-death accounting period. The hearing was again continued, and Simon filed an amendment to the supplemental account.

Prior to the new hearing date (November 15, 2013), an examiner raised an additional question about Simon's fee request. This time, however, the inquiry apparently had nothing to do with Simon's work during the post-death accounting period. Rather, it had to do with Simon's actions during the prior, pre-death accounting period, and specifically her actions during the weeks immediately preceding Resnick's death. Simon accordingly filed a further declaration discussing Resnick's mental health and substance abuse problems, the challenges they presented in managing her estate, and the actions Simon took after January 31, 2011, when Resnick had refused to interact with Simon. Simon also directed the court's attention to the same conservator log entries that had been before the court in January 2012, when it had approved both the pre-death accounting and Simon's work during that accounting period. Simon also pointed out she was conservator only of Resnick's estate, not her person, although she had helped Resnick out in other ways when Simon had the time to do so, for example, by encouraging Resnick to seek treatment for her health and addiction problems.

At the November 15 hearing, the probate court focused on Simon's actions in the weeks preceding Resnick's death and pronounced them woefully deficient. In the court's view, Simon should have done substantially more to determine why Resnick had not responded to attempts to contact her and Simon's failure to check on Resnick regularly amounted to gross negligence. Based on this purported dereliction in duty during the pre-

4

death accounting period, the court denied conservator fees for all of Simon's work during the post-death accounting period and fees for the additional work that would be required to close the conservatorship estate. The court issued its written order on November 26, 2013, stating in pertinent part that Simon's acts during the post-death accounting period were accepted but not approved.

## DISCUSSION

In denying fees, the probate court cited to Probate Code section 2640, subdivision (c),[1] which provides in relevant part: "Upon the hearing, the court shall make an order allowing (1) any compensation requested in the petition the court determines is just and reasonable to the guardian or conservator of the estate for services rendered." (§ 2640, subd. (c)(1).) Reasonable compensation depends on the circumstances of each case. (*Estate of McLaughlin* (1954) 43 Cal.2d 462, 467–468.) The conservator is entitled to compensation for his or her time when it results in a benefit and service to the conservatee and estate. (*Estate of Gump* (1991) 1 Cal.App.4th 582, 597.) Compensation may be reduced or denied when the conservator breaches his or her fiduciary duty. (*Ibid.*)

While an order approving or denying conservator fees is generally reviewed only for abuse of discretion (see *Guardianship of Levi* (1943) 61 Cal.App.2d 644, 645–646), here the probate court's order denying fees is erroneous as a matter of law for two reasons. (See *Conservatorship of Estate of Kane* (2006) 137 Cal.App.4th 400, 405 ["pure issues of law concerning the jurisdiction and authority of the probate courts" are reviewed de novo].)

First, the court erred in disregarding the fact that in January 2012 it had issued an order approving Simon's Third and Final Accounting and expressly approving her conduct as conservator during this pre-death accounting period. This order was appealable (§ 1300, subds. (b), (c) & (f)) and, since there was no appeal, subsequently became *final* as to all matters covered by it (§ 2103, subd. (a)). As a consequence, Simon

---

[1] All further statutory references are to the Probate Code unless otherwise indicated.

was released "from all claims . . . based upon any act or omission directly authorized, approved, or confirmed in the judgment or order." (§ 2103, subd. (a).) In doing an about-face in November 2013 and purportedly finding some of that same, previously approved conduct appallingly inadequate, the probate court effectively vitiated both the finality of its January 2012 order and the protection afforded to Simon by section 2103, subdivision (a). It erred in doing so.

Second, what was before the probate court in November 2013 was the supplemental petition for the *post-death accounting period* and Simon's request for conservator fees for work during *that* period. Accordingly, what Simon did or did not do during the prior, pre-death accounting period, was irrelevant. What the probate court was tasked with doing in November 2013 was ruling on the supplemental petition for the post-death accounting period and determining whether the work Simon did during *that* period was capably performed, and if it was, determining the appropriate rate for *that* work. (See § 2640, subds. (a) [specifying timeframe of petitions for compensation for services], (c) [court "shall make an order allowing (1) any compensation *requested in the petition* the court determines is just and reasonable"], italics added.) What the court effectively did, however, was disregard what Simon did during the relevant, post-death accounting period, instead focusing on a portion of her work during the prior, pre-death accounting period. The court thus based its order denying fees on conduct irrelevant to, and having no connection with, the post-death accounting period that was before it. It erred in doing so.

Given these fundamental defects in the probate court's order denying Simon conservator fees for the post-death accounting period, we need not address the court's suggestion that although Simon was appointed conservator only of Resnick's estate, Simon "in effect, took over certain responsibilities" of a conservator of the person and therefore owed more extensive duties to Resnick. As we have discussed above, the probate court erred in revisiting Simon's actions prior to Resnick's death. Thus, whether Simon did enough during the pre-death accounting period to demonstrate an intent to assume the role of conservator of Resnick's person is simply irrelevant to the disposition

6

of the supplemental petition for the post-death accounting period and is therefore an issue that does not warrant further discussion.[2]

Given that the sole basis on which the probate court denied conservator fees for the post-death accounting period was the court's belated concern about some of Simon's conduct during the pre-death accounting period, there appears to be no basis in the record to deny fees for the post-death tasks and time for which Simon requested fees. Indeed, we note that rather than asking for fees pursuant to the generally accepted formula of 1 percent of the estate (which would have totaled slightly more than $30,000), Simon sought just over $4,600 in fees.

## DISPOSITION

The probate court's order of November 26, 2013, is reversed to the extent it denies Simon conservator fees for the accounting period from March 3, 2011 to November 15, 2013, and the matter is remanded for further proceedings on Simon's request for conservator fees for this accounting period consistent with this opinion. Appellant to recover costs on appeal.

---

[2] We also note the Probate Code expressly distinguishes the circumstances under which a conservator may be appointed for the person, the estate, or both. (§ 1801, subds. (a)–(b).) Moreover, establishing a conservatorship *requires* filing of a petition, notice of hearing to all relevant parties, a court investigator's report and recommendations, and a formal order appointing the conservator. (See §§ 1820–1835.) Much of the process is designed to fully inform the conservatee, protect his or her rights, and help the court determine the least restrictive alternative. (§ 1800.) The Probate Code also requires the appointed *conservator* to file an acknowledgement of receipt of a statement of duties and liabilities, and *requires* the court to "provide all private conservators with written information concerning a conservator's rights, duties, limitations, and responsibilities." (§ 1835, subd. (a).) The probate court's suggestion that Simon's occasional efforts to informally help Resnick with nonestate matters saddled Simon with all the duties and responsibilities of a conservator of the person disregarded these important statutory procedural safeguards.

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Margulies, J.